PATRICK G. WALDRON, Appellant, *v.* JAMES C. FARGO, as President of the AMERICAN EXPRESS COMPANY, Respondent.

1. APPEAL — DIRECTED VERDICT. In determining the correctness of a decision, the party against whom a verdict is directed is entitled to the most favorable inferences deducible from the evidence, and all contested facts are to be treated as established in his favor.

2. TRIAL — ERRONEOUS DIRECTION OF VERDICT. Where upon the trial of an action against an express company to recover damages for injuries to horses alleged to have been caused by delay in delivery, the evidence is conflicting as to whether an oral contract of shipment conditioned for delivery at a specified time had been made between the parties and the horses shipped thereunder, or whether they were shipped under a subsequent written contract claimed to have been entered into by the parties which specified no time for delivery and exempted the defendant from liability for delay, and there is evidence of damage to the horses from lack of food and water, the case should be submitted to the jury, and the direction of a verdict is reversible error.

*Waldron* v. *Fargo*, 52 App. Div. 18, reversed.

(Argued January 22, 1902; decided February 25, 1902.)

APPEAL from a judgment, entered June 2, 1900, in favor of defendant, upon an order of the Appellate Division of the

Supreme Court in the fourth judicial department overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant upon the verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Irving W. Cole* for appellant. Defendant made and was bound by a contract with plaintiff to transport the horses all the way to Bridgeport by express, and its breach of this condition by transporting them from New York to Bridgeport by freight, renders it liable and raised a question sufficient to take the case to the jury. (*Pavitt* v. *L. V. R. R. Co.*, 153 Penn. St. 302; *Jennings* v. *R. R. Co.*, 127 N. Y. 438; *Riley* v. *R. R. Co.*, 34 Hun, 97; *Saltzman* v. *R. R. Co.*, 65 Hun, 448; *Swift* v. *Steamship Co.*, 106 N. Y. 206; *Root* v. *R. R. Co.*, 76 Hun, 23; *Hope* v. *Boland*, 58 N. Y. 380; *Chapin* v. *Dobson*, 78 N. Y. 74; *Lowenstein* v. *Lombard, Ayres & Co.*, 164 N. Y. 324; *Talcott* v. *R. R. Co.*, 159 N. Y. 461.) The oral contract that the horses should be delivered by ten o'clock on the evening of the fifth is enforceable, and for breach of it defendant is liable. (*Riley* v. *R. R. Co.*, 34 Hun, 98; *Saltzman* v. *R. R. Co.*, 65 Hun, 448; *Jennings* v. *R. R. Co.*, 127 N. Y. 438; *Swift* v. *Steamship Co.*, 106 N. Y. 206; *Root* v. *R. R. Co.*, 76 Hun, 23; *Pavitt* v. *L. V. R. R. Co.*, 163 Penn. St. 302; *Uptegrove* v. *R. R. Co.*, 16 Misc. Rep. 14; *Robertson* v. *N. S. S. Co.*, 139 N. Y. 416; *Goodrich* v. *Thompson*, 44 N. Y. 324; *Hope* v. *Boland*, 58 N. Y. 380.) It was a question for the jury to say whether the parties intended to be bound by the oral or by the alleged written contract. (*Bostwick* v. *R. R. Co.*, 45 N. Y. 712; *Swift* v. *Steamship Co.*, 106 N. Y. 206; *Root* v. *R. R. Co.*, 76 Hun, 23; *Park* v. *Preston*, 108 N. Y. 434; *Guilluame* v. *G. T. Co.*, 100 N. Y. 491; *Riley* v. *N. Y., etc., Ry. Co.*, 34 Hun, 97; *Saltzman* v. *N. Y. & L. E. Ry. Co.*, 65 Hun, 448; *G. F. Ins. Co.* v. *M. & C. Ry. Co.*, 72 N. Y. 90; *Lowenstein* v. *Lombard, Ayres & Co.*, 164 N. Y. 324;

*Strohn* v. *Ry. Co.*, 21 Wis. 554.) The jury had a right to presume and find negligence on the part of defendant from the undisputed facts of the delivery by plaintiff to defendant and the acceptance by it, as a common carrier, of the horses at Buffalo in good condition to be transported to Bridgeport, and the damaged condition of the horses when delivered at Bridgeport. (*Bowden* v. *Fargo*, 2 Misc. Rep. 551; 68 Hun, 607; *Koenigsheim* v. *H. & A. P. Co.*, 17 Wkly. Dig. 405; *Seybolt* v. *Railway Co.*, 95 N. Y. 562; *J. R. Mfg. Co.* v. *N. H. S. Co.*, 50 N. Y. 121; *Canfield* v. *Railway Co.*, 93 N. Y. 532; *Park* v. *Preston*, 108 N. Y. 434; *Cummings* v. *Wood*, 44 Ill. 416.) Defendant not only failed to show itself free from negligence, but there is an abundance of evidence from which the jury could find negligence with which defendant is chargeable as a cause of such injuries and damage. (*Regan* v. *Ry. Co.*, 61 N. H. 579; *Harris* v. *Ry. Co.*, 20 N. Y. 233; *Clark* v. *Ry. Co.*, 14 N. Y. 570; *Goold* v. *Chapin*, 20 N. Y. 259; *Johnson* v. *Ry. Co.*, 33 N. Y. 612; *Fisk* v. *Newton*, 1 Den. 45; *I. C. Ry. Co.* v. *Adams*, 42 Ill. 474; *T. R. Co.* v. *Hamilton*, 76 Ill. 393; *Dunn* v. *Ry. Co.*, 68 Mo. 268; *Ambraus* v. *Ry. Co.*, 87 Wis. 485.) With the injuries and damage established, and negligence on the part of the carrier shown, to which as a cause the injuries and damage can reasonably be imputed, the question as to whether they were so occasioned is one of fact for the jury. (*Canfield* v. *Railway Co.*, 93 N. Y. 532.) The alleged written contract is void and unenforceable for the reasons that it was not properly executed or delivered; it is without consideration; it is unreasonable and places the plaintiff entirely at the mercy of defendant, and it purports to release a common carrier for the consequences of his gross negligence. (*Nelson* v. *Ry. Co.*, 48 N. Y. 498; *Bissell* v. *Ry. Co.*, 25 N. Y. 442; *Maynard* v. *Ry. Co.*, 71 N. Y. 180; *Belger* v. *Dunsmore*, 51 N. Y. 166; *Zimmer* v. *Ry. Co.*, 137 N. Y. 460; *Nicholas* v. *Ry. Co.*, 89 N. Y. 370; *Russell* v. *Allerton*, 108 N. Y. 288; *Grand* v. *Livingston*, 4 App. Div. 589.) The alleged written contract does not cover the negligence of defendant, which was

the cause of the damages. (*Kenney* v. *Railway Co.*, 125 N. Y. 425; *Wilson* v. *R. R. Co.*, 97 N. Y. 87; *Holsapple* v. *R. R. Co.*, 86 N. Y. 275; *Pratt* v. *R. R. Co.*, 102 Mass. 157; *R. R. Co.* v. *Pratt*, 89 U. S. 123; *Smith* v. *R. R. Co.*, 12 Allen, 531; *Nicholas* v. *R. R. Co.*, 89 N. Y. 370; *Ayers* v. *R. R. Co.*, 71 Wis. 372; *H. S. Co.* v. *R. R. Co.*, 131 Ind. 575.)

*John G. Milburn* for respondent. The transportation of the horses was governed by the written contract between the parties. (*Root* v. *R. R. Co.*, 76 Hun, 23; *Jennings* v. *G. T. Ry. Co.*, 127 N. Y. 447; *Shelton* v. *Merchants' Despatch*, 59 N. Y. 228; *Donovan* v. *S. O. Co.*, 155 N. Y. 112; *Zimmer* v. *R. R. Co.*, 137 N. Y. 460; *Hill* v. *R. R. Co.*, 73 N. Y. 351; *G. Ins. Co.* v. *R. R. Co.*, 72 N. Y. 90; 2 Parsons on Cont. 548, 549; *Fire Ins. Co.* v. *R. R. Co.*, 72 N. Y. 90; *Long* v. *R. R. Co.*, 50 N. Y. 76; *Hill* v. *R. R. Co.*, 73 N. Y. 351.) The defendant was relieved from liability for the injury to the horses by the express provisions of the contract. (*Westcott* v. *Fargo*, 61 N. Y. 553; *Cragin* v. *R. R. Co.*, 51 N. Y. 61; *Nicholas* v. *R. R. Co.*, 89 N. Y. 370.) There is no proof on which the jury could have found that the plaintiff sustained any damage. (*Zimmer* v. *R. R. Co.*, 137 N. Y. 460; *Hill* v. *R. R. Co.*, 144 Mass. 284; *Hart* v. *Penn. R. R. Co.*, 112 U. S. 340; *Coupland* v. *R. R. Co.*, 61 Conn. 581; Hutchinson on Carriers [2d ed.], § 125.)

WERNER, J. As the trial court directed a verdict in favor of the defendant, our review of this case must be governed by the rule that "in determining the correctness of the decision, the party nonsuited or against whom a verdict is directed is entitled to the most favorable inferences deducible from the evidence, and all contested facts are to be treated as established in his favor." (*Higgins* v. *Eagleton*, 155 N. Y. 466; *Ladd* v. *Ætna Ins. Co.*, 147 id. 478; *Weil* v. *D. D., E. B. & B. R. R. Co.*, 119 id. 152; *Rehberg* v. *Mayor, etc., of N. Y.* 91 id. 137.)

The action was brought to recover damages for injuries to a carload of horses which the defendant, as a common carrier, engaged to transport for the plaintiff from Buffalo, N. Y., to Bridgeport, Conn. The plaintiff relied upon an oral contract of shipment, by virtue of which, in consideration of increased compensation, the defendant agreed to deliver the horses in Bridgeport between 9 and 10 o'clock in the night of April 5th, 1898, if the horses were shipped on the passenger train which would leave Buffalo at 8:05 A. M. of that day. The horses were shipped at that time, but did not arrive in Bridgeport until about 6 o'clock in the morning of the next day, and when they were unloaded they were found to have been injured from lack of food and water, as well as from kicking and biting each other. The defendant claimed to have undertaken the shipment of these horses under a written agreement which was silent as to the time of delivery, and contained express and explicit provisions exempting the defendant from liability for damages caused by detention " of any train of cars * * * upon which said property shall be placed for transportation * * * or by the neglect or refusal of any Railroad Company to receive and forward said property * * * or by the fault, negligence or carelessness, gross or otherwise, on the part of said company, its agents or servants." At the close of the evidence the learned trial court directed a verdict in favor of the defendant, on the ground that the written contract must prevail and that the plaintiff had not established a cause of action. The Appellate Division, upon hearing the plaintiff's exceptions in the first instance, sustained that view of the case and affirmed the judgment.

It will thus be perceived that the question which stands in the forefront of this controversy is whether there was evidence from which a jury would have been authorized to find that these horses were shipped under an oral contract of shipment. If, in the light of the favorable inferences to which the plaintiff is entitled, the evidence was fairly susceptible of such a construction, then the case should have been submitted

to the jury, and the direction of a verdict in favor of the defendant was error. This question is sharply accentuated by the practical admission of appellant's counsel that unless the plaintiff's parol evidence tends to establish an independent oral contract which was not related to, nor merged in, the written contract relied upon by the defendant, the writing is binding upon the parties. For the purpose of establishing this oral contract the plaintiff testified that on Monday afternoon, April 4th, 1898, he had a conversation over the telephone with Todd, the agent of the defendant, about shipping a carload of horses to Bridgeport in time for a sale which had been advertised for the following Wednesday. Todd, who was the agent for both the New York Central Railroad Co. and the defendant, stated that it would be impossible to get the horses to Bridgeport by freight in time for the sale. Plaintiff thereupon asked Todd how he could get them there, and the latter replied the only way to get them there is by express. Todd stated that the defendant's line did not run through to Bridgeport, and that he would have to take up the matter with the downtown office to find out more about it. The plaintiff replied that if he could not get them there by freight he would have to go by express, and suggested that Todd take up the matter with the downtown office and give him an answer as soon as possible. Plaintiff further testified that in the latter part of the afternoon or towards evening Todd came over to his office and said he could get the horses there, but he was afraid the price would be too high; that it would cost $175 to send the horses by express, while it would cost only $65 by freight, but there was no other way of getting there, and if plaintiff wanted to have them go by express he (Todd) would have to know at once. Thereupon plaintiff said : " Well, if I give you this carload of horses what time will I have them there." Todd replied : " If we can have this carload of horses loaded and in the car at a quarter-past seven to-morrow morning, so they can leave here on the 8:05 run we can get them into Bridgeport about half-past nine, between nine and ten that evening." Continuing, Todd said : " If you want to go

let me know now so that we can hold the car for you." Plaintiff further testified that he asked Todd if there would be any doubt about it, to which Todd replied: "No, for $175 we will land them there to-morrow night between nine and ten o'clock." Plaintiff says he then called in his man and told him just what Todd had said, and directed the man to have the horses at the car at seven o'clock the next morning, as he had made arrangements with Todd to have the horses taken to Bridgeport.

Had this evidence remained unchallenged and uncontradicted there could, of course, be no doubt that it would have required the court to hold as matter of law that an oral contract of shipment had been entered into between the parties. The contradiction of this evidence by other oral evidence did not change its quality or nature, and the only effect of the contradiction was to create a question of fact which it was the province of the jury to decide.

It is urged on behalf of the defendant that all prior oral negotiations were merged in the written agreement which it is claimed was entered into by the parties on the morning of April 5th, just prior to the shipment of the horses. That would undoubtedly be true if there was no dispute as to the execution of the contract. But the plaintiff, who, concededly, did not sign the contract himself, and did not get possession of it until after the horses had been about three hours on their journey, was not bound thereby unless he authorized or ratified its execution by Burris, his agent. The plaintiff testified that when Todd came to collect the express charges, he gave the latter a check and at the same time received a folded paper which was called a receipt, and which he put into his pocket without reading it; that he afterwards gave it to Burris, his agent, just as he had received it, and never saw it again until the trial. There was evidence that plaintiff was familiar with the defendant's methods of doing business, and that on at least two occasions the plaintiff had shipped horses under written contracts which were identical with the one relied upon by the defendant herein. All this was pertinent to the

questions of fact, whether the plaintiff had authorized his agent to enter into the written contract, or whether he had ratified it after its execution, and should have been submitted to the jury unless the case is governed by some principle or rule which precludes the plaintiff from insisting upon that method of trial. It is urged on behalf of the defendant that Todd, its agent, had no authority to make an oral contract for shipment of the character testified to by the plaintiff. This was probably the fact, and if plaintiff had been shown to have had knowledge of the limitations upon Todd's authority, the oral contract would be clearly void. In the absence of such knowledge, however, the plaintiff had the right to assume that Todd's apparent authority was his actual authority. (*Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 N. Y. 285.) So, under ordinary circumstances, the authority of Burris, plaintiff's agent, to deliver the horses for shipment would be regarded as including the right to stipulate for and accept terms of shipment by which, as against the defendant, the plaintiff would be bound. (*Nelson* v. *Hudson R. R. R. Co.*, 48 N. Y. 498; *Shelton* v. *Merchants' Dispatch Tr. Co.*, 59 id. 258; *Jennings* v. *Grand Trunk Ry. of Canada*, 127 id. 438.) But this rule would not apply if Todd, as agent for the defendant, received the horses under the oral contract testified to by the plaintiff. Under these circumstances the defendant, through Todd, its agent, would be chargeable with notice of the limitations upon the apparent authority of Burris. That authority, according to plaintiff's testimony, was limited to the simple delivery of the horses and did not include the power to make a new contract.

It is contended for the defendant that plaintiff's retention of the written agreement is conclusive evidence of his intention to treat it as the final repository of the agreement between the parties. That might be true if the plaintiff had received the written contract before the shipment of the horses. But after he had parted with control of them, the mere retention, without examination, of the written contract was not sufficient to preclude him from showing what the contract really was. (*Bostwick* v. *B. & O. R. R. Co.*, 45 N. Y. 712; *Germania*

*Fire Ins. Co.* v. *Memphis & C. R. R. Co.*, 72 id. 90; *Guillaume* v. *General Transportation Co.*, 100 id. 491; *Swift* v. *Pacific M. Steamship Co.*, 106 id. 206; *Park* v. *Preston*, 108 id. 434.) The acceptance of plaintiff's version of the transaction would necessarily involve the assumption that the horses were to be delivered in Bridgeport between 9 and 10 o'clock of the day of shipment. Such a contract is enforceable. (*Burtis* v. *Buffalo & State Line R. R. Co.*, 24 N. Y. 269; *Harmony* v. *Bingham*, 12 id. 99.)

There was some evidence that the horses had been damaged from lack of food and water, and also that when cars containing horses are kept in motion the animals are less liable to injury from each other than when the cars are stationary. The liability of a common carrier of animals is not in all respects the same as that of the carrier of inanimate property. (*Clarke* v. *Roch. & Syr. R. R. Co.*, 14 N. Y. 573.) While common carriers are insurers of inanimate property against all loss and damage, except such as is inevitable or caused by public enemies, they are not insurers of animals against injuries arising from their nature and propensities, and which could not be prevented by foresight, vigilance and care. (*Penn* v. *Buffalo & E. R. R. Co.*, 49 N. Y. 204; *Mynard* v. *Syracuse, B. & N. Y. R. R. Co.*, 71 id. 180.) The evidence upon this branch of the case was sufficient to require its submission to the jury, in connection with the question whether the shipment of the horses was made under the oral contract testified to by the plaintiff, or the written and limited contract relied upon by the defendant.

Since these views, upon the single question discussed, require the reversal of the judgment herein, we deem it unnecessary at this time to go into the facts and questions which are pertinent to the defendant's theory of the case.

The judgment should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., BARTLETT, MARTIN, VANN and CULLEN, JJ., concur; HAIGHT, J., dissents.

Judgment reversed, etc.