HENRY J. PERKINS COMPANY *vs.* AMERICAN EXPRESS COMPANY.

Hampden. September 22, 1908. — October 19, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Carrier*, Of goods. *Express Company.* *Evidence*, Remoteness.

Discussion by SHELDON, J., of the effect of a special contract, made with a carrier of goods by the consignor, upon the liability of the carrier in an action against him by the consignee, which is not based upon a definite contract of shipment between the carrier and the consignee, for failure to deliver the goods to the consignee in as good condition as they were when received by the carrier for

transportation; and also of the effect of such a special contract between the consignor and the carrier, when a definite contract as to the shipment previously had been made between the consignee and the carrier.

At the trial of an action of contract by one to whom peaches were consigned, against an express company which had received them for transportation, to recover for loss of value in the peaches alleged to have been due to improper icing of cars by the defendant, the plaintiff contended and introduced evidence tending to show that he had made a special contract with the defendant to the effect that the cars furnished by the defendant should be cooled before the peaches were put into them. The defendant contended and introduced evidence tending to show that the contract of shipment was made, not by the plaintiff, but by the consignor and that there was no provision that the cars should be so iced. The presiding judge instructed the jury that the testimony as to the contract between the consignor and the defendant should be disregarded unless they should find that the consignor was acting for the plaintiff, the consignee, and the defendant excepted. *Held*, that the defendant's exception should be sustained, since the jury were not bound to find in accordance with the plaintiff's contention, but might on the evidence have found that the only real contract of shipment was made with the consignor and that the defendant therefore was not liable.

It is within the discretion of the judge presiding at a trial, where the value of peaches at the termination of a two weeks' journey on an express car is in question, to exclude evidence as to the price paid to the grower for the peaches at wholesale when they were delivered from the orchards to the carrier.

CONTRACT upon an alleged agreement of the defendant with the plaintiff to transport peaches from Hyde's Crossing in New York to Springfield and Boston in cars which should be iced, and to maintain in the cars used to carry the peaches " a proper temperature for preserving said peaches during their transportation," the declaration alleging that a proper preserving temperature was not maintained, due to the cars not being properly iced. Writ in the Superior Court for the county of Hampden dated May 15, 1907.

There was a trial before *Wait*, J. The plaintiff introduced evidence tending to show that, early in September, 1906, one Brown, an employee of the defendant, called at the plaintiff's place of business, showed to the plaintiff's officer, named Perkins, a circular letter from the defendant addressed to its various agents about the fruit crops in western New York, and solicited the business of the plaintiff; that one of the plaintiff's officers stated to Brown that his company was figuring then on going into a deal in western New York; that Brown stated that the defendant would have all the cars properly iced, and would have refrigerator cars to be used for the carrying of these peaches;

·that it had plenty of ice at or near the loading stations to load the cars properly with ice so that the refrigeration would be satisfactory in every way; that, subsequently, on September 7, the plaintiff made a contract with one Bradley and one Potter of western New York to take the product of their peach orchards, and, two or three days later, the representatives of the plaintiff whom Brown previously had interviewed had another conversation with him and told him that the plaintiff company was going to purchase about twenty thousand baskets of peaches, and asked what kind of service the defendant was going to give; that Brown replied that the plaintiff company would have plenty of refrigerator cars and that they would be properly iced.

One Murphy, a witness called by the plaintiff, testified that he was employed by the plaintiff, that he went to western New York for the plaintiff to oversee the picking, packing and shipping of the peaches, and the carrying out of the contract between the plaintiff company and the fruit growers, Bradley and Potter; that the cars were loaded on a siding at Hyde's Crossing; that there was no office of the defendant at that place, the nearest express agency being at Appleton, about five miles west of there; that the first shipments to the plaintiff had begun to be made before the witness arrived in western New York, and that the arrangements for those shipments had been made either by Bradley or by Potter; that upon his arrival he talked with the agent of the defendant at Appleton, and was told by that agent that the cars would be properly iced at Morton, which was thirty-one miles east of Hyde's Crossing, and also in transit; that several times before the shipments in question were made he requested the defendant's agent at Appleton to furnish cars that were iced before the peaches were put into them; that he was told by the travelling agent of the defendant company that the cars would be properly iced along the line; that before the shipments in question he called up by telephone the agent of the defendant at the head office in Rochester to see if he could have the cars with initial icing, so that they would be cold when loaded, and was told that the cars would be iced before coming to Hyde's Crossing to be loaded.

Further evidence introduced by the plaintiff tended to show that the cars in question were not iced or cooled when the

peaches were put on board, and were not iced properly along the route, and that as a result the peaches when delivered to the plaintiff were of much less value than they would have been if the cars had been iced when the peaches were put on board and had been kept iced along the route.

One Bradshaw, a witness called by the defendant, testified that he was the agent of the defendant at Appleton; that he waybilled the cars in question, in the fall of 1906; and, before each of them was shipped, had a conversation with Bradley, who on each occasion called the witness by telephone, notified him that a car was loaded, gave him the number of the car, stated the number of baskets put into the car, gave the initials, said where and to whom it was going, said that such car was without ice, and requested that it be iced at Morton; that the witness on each occasion replied to Bradley that the car shipped would be iced at Morton.

From the waybills of the cars in question it appeared that each of the three shipments was received from Bradley.

Bradley, called by the defendant, testified that he was a farmer engaged in the fruit growing business, and that, on September 7, he and one Potter, also a farmer, entered into a contract with the plaintiff to sell the entire product of their peach orchards for that season; that he, Bradley, attended to the billing of all the cars; that he talked with the agent of the defendant at Appleton, who stated that all the cars would be iced at Morton in good shape; that Murphy, the representative of the plaintiff company, when he arrived, requested the witness to order the cars for him from the express agent; that he did order the cars and did the billing of them; that he talked by telephone with the express agent at Appleton every time a car was to be shipped, told the agent the number of the car, to whom and where it was to go, the number of the baskets in the car and to have it iced at Morton and re-iced in transit; that he had such a conversation with the express agent in regard to each of the three cars in question; that he arranged for the shipment of each car in that way.

The defendant also introduced evidence tending to show that each of the cars in question was iced to its full capacity at Morton, and properly iced along the route.

The charge of the presiding judge with regard to Bradley, referred to in the opinion, was as follows: " With regard to what contract was made with the defendant company either at Rochester or at Hyde's Crossing, you can't give any weight as to what was said by either Mr. Bradley or Mr. Murphy, unless you are satisfied from the other evidence in the case that they were authorized to act for the plaintiff in doing what they did. There is testimony of Mr. Murphy and of Mr. Perkins, too, with regard to what Mr. Murphy was authorized to do, what his general powers were. If he was acting within those powers in arranging with the defendant company for cars at Hyde's Crossing, then the plaintiffs are bound by what he said and did. And it is the same way with Mr. Bradley. If Mr. Bradley was authorized by the plaintiffs, or was authorized by Mr. Murphy, who had authority from them to give such authority, then the arrangements which he made with the defendant company would be binding upon the plaintiff."

At the conclusion of the charge, the defendant requested the presiding judge to save its exception to the above ruling in the charge, the defendant's counsel suggesting that, in the defendant's view of the case, Bradley was the consignor, that Bradley made the contract with the defendant, and that the special contract made by Bradley as consignor was binding upon the plaintiff as the consignee, and the plaintiff would also be bound by any risks which Bradley as consignor assumed.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

Other facts are stated in the opinion.

*A. M. Pinkham*, for the defendant.

*E. W. Beattie*, for the plaintiff.

SHELDON, J.   We regard it as settled that in a suit by a consignee against the carrier of goods for loss of or injury to the goods in transit, the defendant ordinarily may show that the consignor had made with it a special contract of shipment, and that the consignee receives the shipment subject to the terms of such special contract and to the risks thereby assumed by the consignor. *Squire* v. *New York Central Railroad*, 98 Mass. 239, 248. *Finn* v. *Western Railroad*, 112 Mass. 524, 534. *Hill* v. *Boston, Hoosac Tunnel & Western Railroad*, 144 Mass. 284. *Cox*

v. *Central Vermont Railroad,* 170 Mass. 129, 136. See to the same effect *York Co.* v. *Central Railroad,* 3 Wall. 107, 113; *Donovan* v. *Standard Oil Co.* 155 N. Y. 112; *Shelton* v. *Merchants' Despatch Transportation Co.* 59 N. Y. 258; *Nelson* v. *Hudson River Railroad,* 48 N. Y. 498; *Robinson Bros.* v. *Merchants' Despatch Transportation Co.* 45 Iowa, 470; *Christenson* v. *American Express Co.* 15 Minn. 270; *Mouton* v. *Louisville & Nashville Railroad,* 128 Ala. 537, 544. The consignee may maintain an action against the carrier for a breach of the duty imposed upon the latter by law. If this duty has been varied by a contract between the carrier and the consignor, being the contract under which the goods were received and transported by the carrier, the consignee may still sue the carrier, but his rights are subject to the terms of the special contract. And a consignee who has title to the property carried may sue the carrier in contract upon the carrier's implied agreement to deliver the goods to the consignee. But this implied agreement is subject also to the terms of any express contract made by the carrier with the consignor. These doctrines are fully sustained by the cases already referred to.

But it is also settled that where a definite contract of shipment has been made between the consignee or owner and the carrier, this binds both parties as between themselves, and cannot be varied by any subsequent arrangement or agreement made with the carrier by the consignor or any other person acting in the shipment, unless of course such person has authority from the consignee to alter the original contract. This was held in *Jennings* v. *Grand Trunk Railway,* 127 N. Y. 438, 449, *Waldron* v. *Fargo,* 170 N. Y. 130, 154, and *Ohio & Mississippi Railway* v. *Hamlin,* 42 Ill. App. 441. It is the underlying reason for the decisions in *Perry* v. *Thompson,* 98 Mass. 249, 253, *Russell* v. *Erie Railroad,* 41 Vroom, 808, and *Hayes* v. *Campbell,* 63 Cal. 143. It is the rule stated in 1 Hutchinson on Carriers, (3d ed.) § 459, with citation of cases. To hold otherwise would be to say that one party to a contract might relieve himself from its obligations without the consent or knowledge of the other by merely making an inconsistent agreement with a third party.

But in the case at bar one of the matters in dispute was whether the goods in question had been transported under an

original agreement with the plaintiff, or whether it appeared that there had been nothing more than some preliminary negotiations with it in Springfield or with its representative Murphy in Western New York, and that the actual shipping agreement had been made between the defendant and Bradley, one of the shippers of the goods. As in *Waldron* v. *Fargo*, 170 N. Y. 130, already referred to, this question should have been submitted to the jury. The presiding judge apparently assumed that it was not in dispute that the agreement for the shipment had been made between the plaintiff and the defendant, and carefully and accurately instructed the jury as to the terms of this agreement and the rights and duties of the parties growing out of it. There is in the bill of exceptions some justification for this assumption. But we think that it does sufficiently appear that the question with whom the defendant's agreement was made was in issue, as well as the question as to the terms of such agreement. The defendant's counsel, in saving his exceptions to the rulings made in the charge to the jury, expressly stated his contention that Bradley was the consignor of the goods, that he made the contract with the defendant, and that the special contract made by him as the consignor was binding upon the plaintiff as the consignee.

Under the rulings made, the jury may have been obliged to refrain from considering what was said and done by Bradley, on the ground that he had no authority to act for the plaintiff. If so, they might well have found that the talk between Perkins and Brown did not itself amount to a concluded contract, that the only contract of the defendant was made with Murphy as the plaintiff's representative at Rochester or at Hyde's Crossing, and that the terms of this contract were as claimed by the plaintiff. If they had been allowed to consider the testimony as to Bradley, it may be that they would have found that the only real contract of shipment was made between the defendant and him acting as consignor of the goods, and that the plaintiff was bound by this agreement. Accordingly, there must be a new trial.

As the question of admitting evidence of the price paid for these goods at Hyde's Crossing may arise again, it is proper to say that we see no error in excluding that evidence. The plain-

tiff's damages depended upon the market value of the peaches in Springfield and Boston respectively. Evidence of the price paid for them in the orchard at Hyde's Crossing might have a bearing upon their market value there in their condition at that time. But the judge had a right to exclude it as bearing too remotely upon their market value in baskets at Boston or Springfield one or two weeks later. Both the condition and the location of the property had become greatly changed, and there was nothing to show that the changed circumstances had produced no change in the market value, as in *Croak* v. *Owens*, 121 Mass. 28. It was not simply the short lapse of time, but the considerable change in situation and condition that must be considered. There is nothing inconsistent with this in *Eaton* v. *Mellus*, 7 Gray, 566, *McAvoy* v. *Wright*, 137 Mass. 207, or *White Sewing Machine Co.* v. *Phenix Nerve Beverage Co.* 188 Mass. 407, relied on by the defendant.

*Exceptions sustained.*