ЕMERY AND COMPANY, INCORPORATED, *vs.* BOSTON AND MAINE
RAILROAD.

. Suffolk.   March 4, 1918. — May 24, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Carrier,* Of goods. *Railroad.   Negligence,* In care of perishable goods. *Bill of
Lading.*

Where a bill of lading issued by a railroad corporation for the transportation by rail
of pickled herring contained no agreement of the carrier that the refrigerator car
in which the herring were shipped should be iced by the carrier, and where the
owner and consignee of the fish agreed with the carrier to make, and did make,
an arrangement to replenish the ice, and the fish were spoiled by reason of the
consignee's own failure to provide sufficient ice to keep them in good condition
after their arrival in a freight yard of the carrier, the consignee cannot hold the
carrier liable for his loss thus sustained.

Where the owner and consignee of one hundred and fifteen barrels of pickled her-
ring, having been notified by a railroad corporation of their arrival in a re-
frigerator car at a freight yard of the corporation, found that by reason of warm
weather the car needed re-icing and, knowing that the freight yard closed at
five o'clock in the afternoon, between half past four and a quarter to five
o'clock in the afternoon gave an order to an ice company to re-ice the car and
the foreman of the ice company, knowing the hour of closing of the yard, sent
a loaded ice team, which arrived at the yard at half past five or a quarter to
six o'clock and failed to get admitted, and the fish in consequence were spoiled,
and where, although it appeared that the consignee asked for and received from
the railroad corporation permission to re-ice the car, yet it did not appear that
delivery of the ice for this purpose was to be made in any other way than in ac-
cordance with the general regulations for the transaction of business at the yard
and no application was made to the assistant yard master, who had authority
to give instructions to keep the gates open, for permission to enter late, in an
action by the consignee against the railroad corporation for his loss thus sus-
tained, there is no evidence to submit to the jury of negligence on the part of the
defendant.

CONTRACT OR TORT against the Boston and Maine Railroad by
Emery and Company, Incorporated, as the owner and consignee
of one hundred and fifteen barrels of pickled herring for the spoil-
ing of the herring alleged to have been caused by the fault or
negligence of the defendant.   Writ dated May 27, 1914.

The plaintiff's declaration, as amended, was as follows:

"First count.   And the plaintiff says the defendant is a com-
mon carrier for hire of passengers and goods and received for

carriage to the plaintiff one hundred and fifteen barrels of pickled herring to be carried from Eastport in the State of Maine to Boston in the county of Suffolk; and that through the carelessness and negligence of its officers, agents and servants the Boston Ice Company, an agent of the plaintiff, was unable to gain access to the yard of the defendant in Boston for the purpose of re-icing said herring; and that in consequence thereof said herring were rendered unsalable for food purposes and that the plaintiff suffered great loss and damage. And the plaintiff being in doubt whether its action lies in contract or tort adds the following count in tort.

"Second count. And the plaintiff says that the defendant is a common carrier of goods for hire and that on or about September 9, 1912, through the carelessness, recklessness and negligence of the defendant, its officers, agents and servants a carload of fish belonging to the plaintiff was permitted to decay and its value to be destroyed.

"Wherefore, the plaintiff claims damages, both counts being for the same cause of action."

· In the Superior Court the case was tried before *Dubuque,* J. The evidence is described in the opinion. At the close of the evidence the judge ordered a verdict for the defendant and reported the case for determination by this court, with the stipulation that, if the case ought to have been submitted to the jury, this court might order judgment for the plaintiff "for such of the items as the jury would have been warranted in finding in its favor;" otherwise, judgment was to be entered for the defendant on the verdict.

*J. J. Cummings,* for the plaintiff.

*G. E. Kimball,* for the defendant.

BRALEY, J. It either was uncontroverted or the jury would have been warranted in finding, that the defendant as the initial carrier on September 7, 1912, received at Eastport, Maine, one hundred and fifteen barrels of pickled herring for transportation to Boston in this Commonwealth, where the Union Freight Line or Union Freight Company as the last carrier received the car for delivery to the plaintiff, the consignee. The car arrived sometime in the forenoon of September 9, and the plaintiff's clerk in the afternoon having been informed by the defendant, "that the car of pickled herring had arrived at the yard," went to the freight office and

obtained "permission to inspect the fish," which were found to be in good condition. But, because of the hot weather, the plaintiff's agent asked for and received permission to re-ice the car. It could be inferred that the car was of the type known as a refrigerator car. The clerk testified, "there was about a third of a bunker of ice on each end," but whether the car before its departure had been iced by the shippers or by the defendant did not appear. It was however agreed, that the defendant should "set the car" on a designated side track where it could be reached, and an order to an ice company to re-ice was accordingly given by the plaintiff between 4:30 and 4:45 P. M. The ice was dispatched about 5:20 P. M., and it would take about fifteen minutes for a team to go from the ice company's office to where the car in question had been placed. The foreman of the ice company who dispatched the ice knew the closing hour for freight in the yard or freight house was 5 P. M. The driver of the ice team, having arrived "at half past five or quarter of six," passed the first gate but the gateman at the second gate would not let him through, and, leaving "the team and two men behind him at the gate," he went to the ice company's office and reported to the foreman, who after making the attempt by telephone failed, as he testified, to get an answer from the defendant's usual place of business, and no further efforts to ice the car were made. The car, without having been iced, was switched to the track of the Union Freight Line where it was received at 8:40 P. M. on September 9.

The defendant does not contend that on September 10 when delivery was made by the Union Freight Line, the fish were in good condition. The car had been inspected not later than 4:30 P. M. on September 9, when the fish were found to be unspoiled; and between that time and 8:40 P. M. the car was received by the last and only connecting carrier.

It is true that the defendant made no contract to deliver the fish to the plaintiff, on whom the burden rested of proving its negligence before transferring the car to the Union Freight Line. *Farmington Mercantile Co.* v. *Chicago, Burlington & Quincy Railroad,* 166 Mass. 154. *Moore* v. *New York, New Haven, & Hartford Railroad,* 173 Mass. 335, 337.

But, in view of the nature of the shipment shown by the bill of lading, the condition of the weather and the shortness of time

between the arrival of the car and delivery to the plaintiff, the jury could find that owing to defective icing the fish were in a damaged condition when the car left the defendant's yard. The plaintiff makes no contention of unreasonable delay or of any mismanagement in transportation except the defendant's neglect to re-ice. The bill of lading did not require the defendant to ice the car, and it is unnecessary to decide whether this duty had been undertaken by the defendant under its implied obligations as defined in *Smith* v. *New Haven & Northampton Railroad,* 12 Allen, 531, 533, 534, and *Evans* v. *Fitchburg Railroad,* 111 Mass. 142, 143. See also 4 R. C. L. Carriers, § 157, n. 1; 10 Ann. Cas. 171. The plaintiff was the owner and consignee and, as the record shows and the first count of the declaration alleges, agreed with the defendant to make and made an arrangement to replenish the ice. The agreement having been subsequent to the bill of lading was valid, and bound the plaintiff. *Henry J. Perkins Co.* v. *American Express Co.* 199 Mass. 561. *Taylor* v. *Finnigan,* 189 Mass. 568. And the consequences resulting from the plaintiff's own failure to provide sufficient ice are not imputable to the defendant. Nor can a party recover where his own negligence is as much the cause of the loss as the negligence of the defendant. *Squire* v. *New York Central Railroad,* 98 Mass. 239.

It is urged lastly that the refusal of the gateman to permit the ice wagon to enter the yard is negligence on the part of the defendant to which the loss of the fish could have been found by the jury to be attributable. If the arrangement for icing must have been understood by the parties as including access to the premises and the track where the car was to be placed, yet there is no evidence that delivery of ice for this purpose was to be made except in accordance with the general regulations of the defendant for the transaction of business at the yard. The plaintiff gave the order to the ice company without any further instructions. It is plain, of course, that in all which followed the ice company acted as the plaintiff's agent, and the foreman knew the rules of the railroad required the gates to be closed at a certain hour. But with this knowledge, as well as with knowledge that entrance to the yard could not be obtained thereafter without ·specific orders to the gateman, no application was made to the assistant yardmaster who "had full authority to instruct, if necessary, to keep the

gates open," for permission to enter late.  The attempt of the foreman after the wagon returned, and he was informed of the circumstances, to communicate by telephone with the defendant's officials, and getting no response, his abandonment of all further efforts to execute the plaintiff's order, cannot affect the defendant, which on the record was not charged with the performance of the duties owed to the plaintiff by its agent.

We are of opinion that no negligence of the defendant rendering it liable to damages either in contract or tort has been shown. The exceptions to the admission and exclusion of evidence not having been argued need not be considered, and, no error of law having been shown, the defendant is entitled to judgment on the verdict.

*So ordered.*