WILLIAM S. CLAY and Others, as Copartners Doing Business under the Firm Name and Style of the SCHOHARIE COUNTY PRODUCE COMPANY, Appellants, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

Third Department, November 15, 1928.

*Harry M. Schaffer*, for the appellants.

*Whalen, Murphy, McNamee & Creble* [*Charles E. Nichols, Jr.,* of counsel], for the respondent.

VAN KIRK, P. J.  A car of live poultry was shipped from London, Ont., to New York city, stop off at Buffalo, on December 27, 1924.

This car reached Buffalo on Sunday, December twenty-eighth. There the shipper, Will & Zaephel, sold the poultry to these plaintiffs and the car was reconsigned to plaintiffs at Schenectady, N. Y., under the initial bill of lading. On the morning of December thirtieth, "around 7 or 8 o'clock," plaintiffs received notice that the car had reached Schenectady. It had been reconsigned to Schenectady about noon December twenty-eighth. Mr. Bliss, one of the plaintiffs, does not remember whether he locked the car, but he testifies that nobody representing plaintiffs rode in, or accompanied, this car from Buffalo to Schenectady. There is no proof at what hour on the twenty-eighth the car left Buffalo; no proof, unless it be inferred from the length of time which elapsed, of any unusual delay in the transportation, and no cause for delay is mentioned. Nor is there any proof of the ordinary running time for such freight between Buffalo and Schenectady. There is an allegation in the complaint, upon information and belief, that defendant negligently conducted itself in the custody and transportation of the property in violation of the statutes and negligently failed to deliver said property with reasonable dispatch. There is testimony that, when the poultry reached Schenectady, it was in bad condition, nearly 3,500 pounds being dead.

The defendant is a common carrier. The general rule is that such a carrier is liable as an insurer; but this rule does not apply to live animals or birds. "While common carriers are insurers of inanimate property against all loss and damage, except such as is inevitable or caused by public enemies, they are not insurers of animals against injuries arising from their nature and propensities, and which could not be prevented by foresight, vigilance and care." (*Waldron* v. *Fargo*, 170 N. Y. 130, 138; *Penn* v. *Buffalo & Erie R. R. Co.*, 49 id. 204; *Cragin* v. *N. Y. Central R. R. Co.*, 51 id. 61.) In the latter case it is said (p. 63): "In the transportation of such stock, in the absence of negligence, the carrier is relieved from responsibility for such injuries as occur in consequence of the vitality of the freight." The only testimony showing the cause for the damage to the poultry is given by plaintiff's witness Bliss. He says he can say with reasonable certainty that the failure to feed properly while in transit was the cause of the condition found; that it was due to the lack of food; he could observe the starved condition of the poultry. It thus appears that the cause of the death of the poultry was not due to any injury occasioned by transportation, but was due to the nature and propensities of the birds, to "the vitality of the freight." In the contract in the bill of lading the shipper agreed to feed the poultry at his own expense and risk while in transit; and, where the destination of the shipment

is more than 150 miles from the point of shipment, the shipper "must, unless special arrangements are otherwise made in writing, accompany and care for the shipment." No special arrangements were made and the distance from Buffalo to Schenectady is about 280 miles. It does not appear that the carrier even knew that the shipper was not accompanying and caring for the poultry from Buffalo to Schenectady. These plaintiffs, having purchased the carload of poultry, which, as alleged in the complaint, was reconsigned at Buffalo "subject to the terms and conditions" of this bill of lading, stood in the position of the shipper and were bound by the shipper's contract.

But plaintiffs claim that, under the Interstate Commerce Act of February 4, 1887, section 20, which was amended on June 29, 1906, by the Carmack Amendment, and on March 4, 1915, and on August 9, 1916, by the First and Second Cummins Amendments, and which was further amended on February 28, 1920, by the Transportation Act of 1920, and which is now subdivision 11 of section 20 of title 49 of the United States Code, defendant cannot limit its liability by contract. The statute declares "that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law." This section 20 applies to the rule of liability and not to the elements of damage; it provides that the common-law liability, as it stood when the act was passed, could not be changed or limited by contract. By this bill of lading there is no attempt to change the rule of liability. "There could be no reservation [in the bill of lading which would be] of avail against negligence." "'The rigor of this liability [the common-law rule against the carrier] might be modified through any fair, reasonable and just agreement with the shipper which did not include exemption against the negligence of the carrier.' (*Adams Express Co.* v. *Croninger,* 226 U. S. 491; *Missouri, K. & T. R. Co.* v. *Harriman,* 227 id. 657.)" (*Walrath* v. *American Railway Express Co.,* 217 App. Div. 83, 87.) In the latter case horses were being transported and the Federal Cruelty to Animals Act, also known as the Twenty-eight Hour Law (34 U. S. Stat. at Large, 607, chap. 3594, § 1; Barnes Fed. Code, § 8295; U. S. Comp. Stat. § 8651; now U. S. Code, tit. 45, § 71), was invoked. We think the comments of the court apply to this case. However, the Federal Cruelty to Animals Act does not apply. Its provisions are confined to the transportation of

animals in these words: " cattle, sheep, swine, or other animals."
It does not apply to poultry; birds are not animals.

Upon this record we are not able to determine that there might not have been a delay in the shipment between Buffalo and Schenectady which was a proximate cause of the damages suffered. We conclude, therefore, that the judgment of the County Court, which granted a new trial, should be affirmed, with costs to the respondent to abide the event.

HINMAN, DAVIS, HILL and HASBROUCK, JJ., concur.

Judgment affirmed, with costs to respondent to abide the event.