POSTAL TELEGRAPH-CABLE CO. v. CALL, District Judge.

(Circuit Court of Appeals, Fifth Circuit. February 13, 1919.)

No. 3267.

1. RAILROADS ⊂⇒5½, New, vol. 7A Key-No. Series—GOVERNMENT CONTROL—STAY OF ACTIONS—CONDEMNATION OF RIGHT OF WAY FOR TELEGRAPH LINE.

Under Act March 21, 1918, § 10, providing that actions at law or suits in equity may be brought against carriers under federal control and judgments rendered, but no process shall be levied against any property under federal control, an action by a telegraph company to condemn a right of way for a telegraph line along the right of way of a railroad company under federal control will not be stayed because the latter company was under federal control.

2. TELEGRAPHS AND TELEPHONES ⊂⇒26¾, New, 7A Key-No. Series—AUTHORITY OF TELEGRAPH COMPANY UNDER FEDERAL CONTROL.

Though the United States has taken over the operation of telegraph lines, a telegraph company may institute and continue condemnation proceedings to acquire new rights of way; the company's franchise and corporate entity not having been affected by the government's action.

3. MANDAMUS ⊂⇒31—REFUSAL TO PROCEED WITH CAUSE—RAILROAD—FEDERAL CONTROL.

Where the federal District Judge stayed proceedings in an action by a telegraph company to condemn a right of way for its line over a railroad right of way because the railroad was under federal control, held, that mandamus to compel the District Judge to proceed with the case will not be denied on the theory that the government might never surrender control of transportation systems, for Act March 21, 1918, § 10, relating to litigation against railroad companies, contemplated no delay in litigation, but merely a stay of process, and, in event private operation of railroads be resumed, it would be to the interest of the telegraph company to have the condemnation action disposed of.

Petition by the Postal Telegraph-Cable Company, a corporation, for writ of mandamus to Hon. Rhydon M. Call, Judge of the United States District Court for the Southern District of Florida. Writ ordered to issue.

Sam R. Marks, of Jacksonville, Fla. (Marks, Marks & Holt, of Jacksonville, Fla., on the brief), for petitioner.

John E. Hartridge, of Jacksonville, Fla., for respondent.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an application addressed to this court by the petitioner for a writ of mandamus to the respondent, directing him to proceed to hear and determine a controversy pending between petitioner, as plaintiff, and the Florida East Coast Railway Company and the American Telephone & Telegraph Company, as defendants, in the District Court of the United States for the Southern District of Florida, in which the petitioner is seeking to condemn a right of way for a telegraph line, upon and along the right of way of the Florida East Coast Railway Company between East Palatka and Miami, a distance of about 304 miles.

[1] The petition avers that on April 15, 1918, the cause was at is-

sue and came on for trial, and that the defendant railway company then filed a special plea, setting out that its railroad was on December 28, 1917, taken possession of by the President of the United States, through the Secretary of War, and was then being operated by the Director General of Railroads of the United States, and that petitioner's condemnation action should not be permitted to go further without the consent of the Director General. The District Court sustained the plea, and ordered that the further prosecution of the cause be stayed or suspended until the petitioner had procured the consent of the Director General of Railroads or of the War Department, or until such time as the government had surrendered possession of the railroad of the Florida East Coast Railway Company to its owners.

Section 10 of "An act to provide for the operation of transportation systems while under federal control, for the just compensation of their owners, and for other purposes," approved March 21, 1918 (Act March 21, 1918, c. 25 [Comp. St. 1918, § 3115¾i]) is as follows:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. *Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government.* Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier; and any action which has heretofore been so transferred because of such federal control or of any act of Congress or official order or proclamation relating thereto shall upon motion of either party be retransferred to the court in which it was originally instituted. *But no process, mesne or final, shall be levied against any property under such federal control.*"

The pertinent parts are underscored. Its effect is to limit the interference of government control in the prosecution of suits against carriers, whether at law or in equity, to the enforcement of the judgment or decree and not to interfere with the right of the plaintiff to obtain a judgment or decree against the carriers. It permits actions at law or in equity to be brought against the carriers, and judgments to be rendered as now provided by law, and prohibits the carrier from defending upon the ground that it is an instrumentality or agency of the federal government. It provides, however, that the judgment or decree, when obtained, shall not be enforced, as against the property in federal control, by process, mesne or final. We think the express words of the statute require the court to proceed to judgment or decree in any pending cause, and to prohibit any defense being made to the obtaining of the judgment or decree upon the idea that the carrier or its property is in government control or possession.

The United States was not a party defendant in the condemnation case, and could not have been made such except by its consent, and so will not be affected by any decree that may be rendered in that cause, in its absence. Its rights are fully protected by the statutory provision that any decree there rendered is unenforceable while the rail-

road remains in the control of the government, if such a provision was necessary to afford such protection to it.

[2] The control of the United States over the lines of petitioner does not affect its right to institute condemnation proceedings. Petitioner's corporate entity and its franchises were not taken over by the government, but only its existing physical lines of telegraph. This left its right to institute condemnation proceedings and to acquire new rights of way unimpaired.

[3] It is said that the decree, if obtained, will be valueless, until the property is surrendered by the government, which may never occur; and that proceeding in advance of a surrender will prove a futile thing, if there turns out to be no surrender. There is a manifest advantage to the petitioner in being allowed to proceed to judgment now, in that the necessary period for securing a judgment will begin to run from the present time, instead of from the end of government control. If the decree never becomes enforceable against the railway company, no harm will be done it by now proceeding, except the time of counsel and witnesses during the hearing. The delay to the petitioner, if the proceeding is stayed, may be a serious detriment to it and to the public served by it. The statute seems to have been framed with the purpose of preventing government possession from causing delays in litigation, and we think it is properly applicable to this case.

Let an order issue to the respondent, directing him to proceed to hear and determine the controversy, as prayed for in the prayer of the petition.