# MACLEOD ET AL., CONSTITUTING THE PUBLIC SERVICE COMMISSION OF MASSACHUSETTS, *v.* NEW ENGLAND TELEPHONE & TELEGRAPH COMPANY.

## CERTIORARI TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 957.   Argued May 5, 6, 1919.—Decided June 2, 1919.

Decided on the authority of *Dakota Central Telephone Co.* v. *South Dakota, ante,* 163.

232 Massachusetts, 465, affirmed.

THE case is stated in the opinion.

*Mr. William Harold Hitchcock,* Assistant Attorney General of the Commonwealth of Massachusetts, with whom *Mr. Henry C. Attwill,* Attorney General of the Commonwealth of Massachusetts, was on the brief, for petitioners:

The respondent through its officers and employees is now operating the telephone system owned by it as an instrumentality of the Federal Government.

It follows, therefore, that, if the power to regulate intrastate rates has been reserved to the States by the joint resolution under consideration, the respondent is the proper agency in Massachusetts against which the exercise of that power should be directed.

Jurisdiction of Massachusetts over the regulation of intrastate telephone rates, after action by the President under the Joint Resolution of July 16, 1918, was reserved to it by that resolution. We raise no question but that Congress had the power to authorize, or even to require, the taking over of the telegraph and telephone systems of the country by the Federal Government for military purposes and " for the common defence."

It may be conceded that it was well within the limits of federal power, when these systems had thus been taken over as a war measure, entirely to exclude the public from their use, if the exigencies of the war fairly warranted such action. When, however, it has been found not inconsistent with the purpose for which these systems had been taken over to permit the public to continue to use them, it would seem that the determination of the amount to be charged for such use had no relation whatever to the conduct of the war or the exercise of the war powers. Obviously, Congress could not authorize the taking of these systems by the Federal Government solely for revenue purposes even during time of war. It may be suggested that, the systems having been taken over and the public having been permitted to use them so far as not inconsistent with government use, it was within the power of Congress to authorize, and of the President and his representatives to exercise, the regulation of the rates to be charged for such service entirely within a State as a mere incident of government operation for war purposes. If this be so, such regulation must be strictly confined to its mere incidental purpose. It cannot be extended to make the dominant purpose of the exercise of such a power the raising of revenue or, *a fortiori*, the standardizing of telephone rates upon a uniform basis throughout the Nation in the assumed interest of the telephone users of the country, which was the admitted purpose of the establishment of the rates in question. Such action seems to go beyond the scope even of the far-reaching war powers. However, no such difficult and delicate question arises in this case. Congress foresaw the serious difficulties which might arise from such a conflict between national and state powers at a time when harmony was essential. It, therefore, appears to have determined that these most fundamental powers of the States should be interfered with as little as possible. The question now before the

court turns entirely upon the interpretation to be given to this proviso.

The language of the proviso of the joint resolution itself shows that the phrase "police regulations" is there used in its broadest sense. The express exceptions from the power reserved to the States show the breadth of that reservation. The control of the issue of stocks and bonds is but an incident of the power to control rates. If "police regulations" was here used in any narrow sense, the exception would be meaningless.

The whole resolution indicates a purpose to authorize the taking of the telegraph and telephone systems for the direct prosecution of the war, but makes clear that, to the extent that the public is to be permitted to use them as before, the regulative powers of the States should not in any wise be limited except as expressly stated. The prosecution of the war required the prompt transmission of government messages under conditions which would insure secrecy. It had no possible relation to the cost of service to private users of these systems.

The history of the joint resolution, particularly of the language of the proviso under consideration, plainly points to the same conclusion.

This suit is not beyond the jurisdiction of the Massachusetts court on the ground that the United States is a necessary party or that the suit is in effect against the United States.


*The Solicitor General* for respondent. See *ante,* 164.


*Mr. William I. Schaffer,* Attorney General of the Commonwealth of Pennsylvania, and *Mr. Bernard J. Myers,* Deputy Attorney General of the Commonwealth of Pennsylvania, by leave of court, filed a brief as *amici curiæ,* on behalf of the Commonwealth of Pennsylvania.

*Mr. Charles E. Elmquist,* by leave of court, filed a brief as *amicus curiæ,* on behalf of thirty-seven States and the National Association of Railway and Utilities Commissioners.

*Mr. John G. Price,* Attorney General of the State of Ohio, by leave of court, filed a brief as *amicus curiæ,* on behalf of the State of Ohio.

*Mr. Albert C. Ritchie,* Attorney General of the State of Maryland, by leave of court, filed a brief as *amicus curiæ,* on behalf of the State of Maryland.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The petitioners, composing the Public Utilities Commission of the State of Massachusetts, filed their bill against the respondent to compel it to enforce certain telephone rates for intrastate business established in conformity to the state law and to forbid the putting into effect of conflicting rates fixed by the Postmaster General in a schedule by him established and the enforcement of which he had ordered.

On the petition and answers the case was reserved for the consideration of the Supreme Judicial Court where it was finally decided. The court in a lucid opinion, speaking through Mr. Chief Justice Rugg, having after full consideration reached the conclusion that the Postmaster General was empowered by the law of the United States to fix the schedule of rates complained of and that the Telephone Company was authorized by such law to put in effect and enforce such rates even though in doing so the rate established by the Public Service Commission of the State was disregarded, held that the suit was virtually one against the United States which the court was without

195.                    Counsel for the United States.

power to entertain and entered a decree of dismissal for want of jurisdiction. But the form of the decree thus entered affects in no way the control and decisive result, upon every issue in the case, of the ruling this day announced in *Dakota Central Telephone Co.* v. *South Dakota, ante,* **163.** It follows therefore that in this case our decree must be and is one of affirmance.

*Affirmed.*

MR. JUSTICE BRANDEIS dissents.