HAUBERT v. BALTIMORE & O. R. CO. et al.

(District Court, N. D. Ohio, E. D.   September 3, 1919.)

No. 10053.

1. RAILROADS ⬦⟿5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—ACTION AGAINST DIRECTOR GENERAL—CONSENT.
    Though action against the Director General of Railroads, based on his contract or act, be in effect against the United States, the requisite consent and authority for such action is given by Federal Control Act March 21, 1918, § 10 (Comp. St. 1918, § 3115¾j).

2. RAILROADS ⬦⟿5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—LIABILITY OF RAILROAD FOR PUBLIC AGENTS' ACTS.
    Within Federal Control Act March 21, 1918, § 10 (Comp. St. 1918, § 3115¾j), subjecting carriers, while under federal control, to all liabilities as common carriers, except so far as may be inconsistent with the provisions of the act, and permitting actions to be brought and judgments rendered as now provided by law, it would be inconsistent with all the provisions of the act to subject a railroad company to liability for acts and conduct of public agents operating its property under federal control.

3. RAILROADS ⬦⟿5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—LIABILITIES FROM OPERATION—ACTION.
    Liabilities due to operation of railroad by the agencies having possession by virtue of the acts creating and authorizing federal control are not those of the railroad company, and suit thereon may not be brought against it and prosecuted to judgment; but a claimant is limited to right of action against the federal control agency and to such sources of payment as are provided by the Federal Control Act (Comp. St. 1918, §§ 3115¾a–3115¾p).

At Law.   Action by John Haubert, administrator of Rose Haubert, deceased, against the Baltimore & Ohio Railroad Company and Walker D. Hines, Director General of Railroads.   On demurrer as to defendant Railroad Company.   Demurrer sustained.

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Amerman & Mills, of Canton, Ohio, for plaintiff.
J. M. Lessick and Charles Lessick, both of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge.   Plaintiff's cause of action is based on the alleged wrongful death of Rose Haubert, which occurred during the period of federal control, and is alleged to have been due to the negligent operation of a railway train of the Baltimore & Ohio Railroad Company, operated by the Director General of Railroads under said federal control.   The question presented and argued is whether or not the liability for this cause of action can be asserted against the Baltimore & Ohio Railroad Company, and prosecuted to judgment against it, rather than against the Director General of Railroads.   Disregarding all question of form, I deem it proper to express a final opinion upon this question.

It is now conclusively settled that complete possession and control of all such railway lines as are under federal control, and not a divided possession and control, have been transferred to the United States by virtue of the act of August 29, 1916 (Comp. Stat. § 1974a), the proclamation of the President of December 26, 1917 (Comp. Stat. 1918, § 1974a), the act of March 21, 1918 (Comp. Stat. 1918, § 3115¾a, and following sections), and the President's proclamation of March 29, 1918.   It seems equally clear that all liability for all actions of the Director General of Railroads during federal control is imposed upon the United States, and does not remain upon the railroad company, which has thus been entirely ousted from the possession, control, and operation of its property.

All moneys and other property derived from the operation of railway lines under federal control are the property of the United States. A revolving fund of $500,000,000 is appropriated, which, together with any funds available from operating income, are to be used to pay the expenses and liabilities of the railway lines while under federal control.   All obligations and liabilities incurred or created during federal control are to be paid therefrom by the Director General, and not by the railway company, excepting only such taxes as are excluded by section 1 of the act of March 21, 1918, and certain other previously existing obligations of the railway company not necessary to be mentioned specifically.   Section 1 also authorizes the making of agreements with the railway companies whereby they are insured compensation for the use of their property during federal control, not exceeding a sum equivalent as nearly as possible to the average annual railway operating income for the three years ending June 30, 1917.   Provision is also made for ascertaining and adjusting this compensation during the period, or in the event such agreements are not made.

[1, 2] Manifestly it seems to me that in view of these conditions no liability exists against the railroad company itself for a personal injury due to operation under federal control, and that no judgment can be rendered therefor which will become a lien upon the corpus of its property or payment compelled therefrom.   If this were done, the result would be that one person's property would be taken without his

consent and without compensation to pay the debt of another. Liabilities thus arising during federal control, it must be conceded, are in substance debts of the United States, notwithstanding, for purposes of administration, the control and operation of the railroads have been vested in an official called the Director General of Railroads. An action against the Director General, based upon any contract or act of his, it may be admitted, is, in effect, a suit against the United States. See opinion of Rugg, C. J., in Public Service Commission v. New England Telegraph & Telephone Co., 232 Mass. 465, 122 N. E. 567, affirmed United States Supreme Court June 2, 1919, in MacLeod et al. v. New England Telephone & Telegraph Co., 250 U. S. 195, 39 Sup. Ct. 511, 63 L. Ed. ——; also Northern Pacific Railway Co. v. State of North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. ——, in United States Supreme Court, decided June 2, 1919, and cases cited.

An action cannot, of course, be maintained against the United States, except by its consent. This consent and authority to sue is conferred by Federal Control Act March 21, 1918, § 10 (Comp. St. 1918, § 3115¾j). No difficulty is perceived why the remedy thus conferred is not adequate; but if inadequate, and further remedies, both in suing and in obtaining payment, are needed to give full relief, they must be sought from that authority which confers the right to sue the United States. Section 10, it is true, subjects carriers while under federal control to all laws and liabilities as common carriers, whether arising under state or federal law or common law, except so far as may be inconsistent with the provisions of that act or any other act applicable to such federal control, or with any order of the President. The second sentence of this section permits actions at law or suits in equity to be brought and judgments rendered as is now provided by law. The first sentence relates to liabilities, and the second to the manner in which they may be enforced.

If the words "common carriers" mean the railway companies themselves, as distinguished from the agency provided by the act for operating the railway lines, it is none the less true that they are made subject only to such liabilities as are not inconsistent with the provisions of the act itself. It may be consistent to subject the railway companies to liabilities created by themselves or existing before being ousted from the possession and control of the property; it would be inconsistent with all the provisions of the act to subject them to liabilities for the acts and conduct of public agents operating their property under federal control. It follows that the provisions of this section do not impose a liability upon the railway companies for acts of the Director General of Railroads and his agents, because so to do would be inconsistent with the provisions of this act. Assuming, however, a liability, the second sentence preserves the right to sue and obtain judgment in any manner now provided by law; and this right, I have held in other cases before me, cannot be modified or limited by orders of the Director General, as was attempted by General Orders 18, 18a, and 26.

This last holding accords with that of District Judge Munger in Friesen v. Chicago, R. I. & P. Ry. Co., 254 Fed. 875, and Judge Bene-

dict, of the New York Supreme Court, in Benjamin Moore & Co. v. Atchison, Topeka & Santa Fé Railway Co., 106 Misc. Rep. 58, 174 N. Y. Supp. 60. I have also held that Order No. 26 was an appeal only to the discretion of the trial judge as to whether or not an action should be stayed or continued, and in this my holding accords with that of Circuit Judge Manton in Harnick v. Pennsylvania Railroad Co., (D. C.) 254 Fed. 748, and District Judge Mayer in Cocker v. New York, O. & W. Railway Co., 253 Fed. 676.

[3] My conclusion is that liabilities due to operation by the agencies having possession by virtue of the acts creating and authorizing federal control are not liabilities of the railroad companies that have been ousted from such possession and control, that suits cannot be brought against such companies and prosecuted to judgment against them, and that such claimants are limited to a right of action against the federal control agency and to such sources of payment as are provided by the Federal Control Act. In this conclusion I am supported by District Judge Munger, in Rutherford v. Union Pacific Railroad Co., 254 Fed. 880, and Judge Benedict, of the New York Supreme Court, in Sagona v. Pullman Co., 174 N. Y. Supp. 536, and Oyler et al. v. C., C., C. & St. L. Ry. (Superior Court, Cincinnati) 17 Ohio Law Rep. 356.

Such holdings to the contrary as I have seen do not seem to me to be based on sound reasoning and should not be followed. This conclusion, it has been suggested, may leave injured persons without adequate redress when federal control is terminated. It will not be assumed that the United States will terminate federal control and cover into the United States treasury the residue of the revolving fund, and excess income, if any, without providing for debts and liabilities incurred during federal control. Yet if such a contingency happens the remedy must be sought otherwise than through judicial legislation.

The demurrer of the defendant railroad company will be sustained. An exception may be noted.