### ROBERT H. CLAPP *vs.* AMERICAN EXPRESS COMPANY.

Hampshire.   October 27, 1919. — November 26, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Carrier,* Of goods. *Evidence,* Relevancy and materiality, Extrinsic affecting writings, Opinion: expert. *Practice, Civil,* Exceptions. *Express Company.*

At the trial of an action against an express company for damage resulting to the plaintiff and alleged to have been caused by delay in the transportation of horses from Cedar Rapids in the State of Iowa to Northampton in this Commonwealth, it appeared that the contract for the shipment was made on January 15, 1918, and on the evidence findings were warranted that at the time of the shipment "weather conditions were extremely bad all through the middle west" and "that the war and war conditions . . . seriously interfered with moving of traffic." The defendant offered to introduce an order of the United States Fuel Administration issued on January 17, 1918. The use of coal by railroads was not limited by the order. The evidence was excluded. *Held,* that the exclusion was proper, the evidence being incompetent and irrelevant.

At the trial of the action above described, it appeared that successive attendants, employed by the plaintiff, accompanied the shipment. Testimony of one of these, as to conversations which he had with an agent of the defendant before the shipment had started, tended to show that, upon his stating to the agent that he was ready to leave Cedar Rapids, the agent had replied that "it was not safe to go, and that he would have to wait a while," and that the agent finally, on January 15, had said, "that the defendant could give a good shipment and run." *Held,* that these conversations were not inadmissible as tending to vary the provisions of the contract contained in the bill of lading.

The same employee testified that, when the shipment arrived at Chicago, the defendant's agent then "promised to get the horses out of Chicago on the train leaving at 10:30 A.M." It appeared that the train had arrived at 10:10 A.M. The shipment did not leave Chicago until 2:30 P.M. *Held,* that the conversation was admissible as evidence of an act of the defendant in connection with the transportation.

While counsel, in framing a hypothetical question to be put to one qualified as an expert witness, may be permitted to assume the existence of facts which the jury have a right to find upon the evidence, and the recital of such facts may be permitted to be partisan, such a question should not contain an assumption of facts as facts upon which liability may be predicated where as a matter of law no such liability can exist.

At the trial of the action above described, it appeared that provisions of the bill of lading placed the entire responsibility of loading, transshipping and unloading, and of furnishing the horses with sufficient and proper sustenance upon the plaintiff. Subject to an exception by the defendant, the plaintiff was permitted to ask a veterinarian, who had been qualified as an expert, in substance, what

would be the effect upon the health of the horses of their being unloaded, fed and watered in cold winter weather only three times during a journey of six days and a half. *Held*, that the question should have been excluded, because the responsibility for the acts, upon which the question was predicated, was not upon the defendant.

It further appeared that, in the charge at the trial above described, the jury were instructed fully and accurately as to the provisions of the contract of shipment relating to non-liability of the defendant, because of the presence of attendants on behalf of the plaintiff, as to loading, unloading, transshipping, feeding and watering the horses. There was evidence warranting a finding that unreasonable delay by the defendant resulted in injury to the horses and caused damage to the plaintiff. *Held*, that the error in the admission of the hypothetical question and its answer did not injuriously affect the substantial rights of the defendant, and that, under St. 1913, c. 716, § 1, the exceptions must be overruled.

CONTRACT OR TORT for damages resulting from a delay in transportation of horses from Cedar Rapids in the State of Iowa to Northampton in this Commonwealth. Writ dated June 29, 1918.

In the Superior Court the action was tried before *Wait*, J. There was evidence tending to show that the shipment left Cedar Rapids one hour before midnight on January 15, 1918; that the defendant's agent in Chicago had notice that it was coming, that it arrived in Chicago at 10:10 A. M., January 16, that it left Chicago at 2:30 P. M., January 16, and had a good run as far as Toledo, Ohio, where the car was taken out of the train and put on a slow train; that it was taken out of the train again at Cleveland, Ohio, where there was a delay of approximately thirty hours; that the shipment then had a poor run to Buffalo, New York, where there was a delay of twenty-three hours; that there was a poor run to Albany, New York, where there was a delay of twenty-three hours, and then that there was a good run to Northampton, Massachusetts. There was evidence that the shipment spent considerable time on side tracks, but no evidence of the actual time so spent was offered except that it arrived in Cleveland at 2:50 in the morning of January 22, 1918, and was not unloaded until 9:30 in the same morning.

Other material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings among others:

"4. In determining what is a reasonable time for the delivery of the shipment of the horses the jury will be guided by all the facts

in the case including mode of conveyance, the distance; the season of the year, the character of the weather, the ordinary facilities for transportation due to the war and war conditions, and any other facts bearing upon the shipment."

"17. A carrier of live stock which live stock is accompanied by the shipper or an agent, is not bound to exercise the highest degree of care, but the exercise of reasonable care under the circumstances is sufficient."

The rulings were refused. There was a verdict for the plaintiff in the sum of $1,751; and the defendant alleged exceptions.

The case was submitted on briefs.

*N. P. Avery, A. S. Gaylord & W. A. Davenport,* for the defendant. *J. W. Mason & A. J. Morse,* for the plaintiff.

BRALEY, J. The defendant on January 15, 1918, engaged to forward from Cedar Rapids, Iowa, to the plaintiff as consignee at Northampton, Massachusetts, "subject to the classifications and tariffs in effect on the date hereof . . . for the sum named in . . . this contract . . . 28 head Commercial horses," which during transportation were accompanied as far as Chicago, Illinois, by the shipper, one Woodworth, and from there to Northampton by one Reed, each of whom acted as the plaintiff's agent. The horses were shipped one hour before midnight January 15, 1918, and were delivered about nine o'clock A. M. January 22, 1918. A short time after delivery three horses became ill from pneumonia, and one from purpura, resulting in their death, while the remainder were emaciated and much reduced in value. The action is brought to recover damages for the loss and depreciation, alleged in the declaration to have been caused by the negligence of the defendant.

The record shows and the jury could find, that previous to and at the time of shipment "weather conditions were extremely bad all through the middle west," and "that the war and war conditions arising therefrom seriously interfered with moving of traffic." The defendant in connection with this evidence offered a certified copy of the order of the United States Fuel Administration issued January 17, 1918, which was excluded subject to its exception. The evidence was irrelevant. The order not only was issued subsequent to the date of the contract and after performance had been begun, but the use of coal by railroads, which were given a preference over necessary current requirements, was not limited by

the order. *West v. New York, New Haven, & Hartford Railroad,*
233 Mass. 162. The defendant as a common carrier (*Brockway* v.
*American Express Co.* 168 Mass. 257, 259), having accepted the
horses for transportation, the fact of governmental control is
not under the circumstances a defence. *Illinois Central Railroad*
v. *Cobb, Christy & Co.* 64 Ill. 128, 139.

The defendant's next exceptions are to the admission of con-
versations between Woodworth and the company's agents relating
to the shipment and continuance of transportation. The sub-
stance of the first talk was, that Woodworth having said he was
ready to leave Cedar Rapids, the agent replied, "it was not safe to
go, and that he would have to wait a while," and finally on January
15, 1918, informed him, "that the defendant could give a good
shipment and run." The second talk was after the horses arrived
at Chicago and before Reed succeeded Woodworth as attendant.
It appears that the defendant's agent had received notice of the
shipment and, the car having arrived at 10:10 A.M., the agent said
that he "promised to get the horses out of Chicago on the train
leaving at 10:30 A. M." The first conversation did not vary the
terms of the contract. It merely explained the climatic conditions
when performance of the contract was begun. *Dondis* v. *Borden,*
230 Mass. 73, 79, 80. The second conversation was an act of the
defendant in connection with the transportation. *Emery & Co.*
*Inc.* v. *Boston & Maine Railroad,* 230 Mass. 463. *Bachant* v.
*Boston & Maine Railroad,* 187 Mass. 392, 396. *Lane* v. *Boston &*
*Albany Railroad,* 112 Mass. 455.

The defendant also excepted to the following hypothetical
question, asked of a veterinarian whose qualifications as an expert
are not questioned: "Assuming that these horses were placed in
the car at Cedar Rapids about 11:30 P.M. on January 15th, and
were unloaded at Northampton at nine o'clock January 22d, thus
being on the journey one hundred and fifty-two and one-half
hours, approximately, six days and a half; that they were un-
loaded, fed and watered three times within this period, at Cleve-
land, Buffalo, and Albany; and that the weather at the time of such
unloading was cold winter weather, and that they were in the car
without food or water for long periods, what would be the effect
of such treatment upon the health of the horses?" The question
should have been excluded. While counsel in framing a hypothet-

ical question can assume the existence of facts which the jury have a right to find upon the evidence, and the recital may be partisan, yet an assumption of fact cannot be made upon which liability may be predicated where as matter of law the defendant by the terms of the contract on which the right of recovery rests is exonerated from such responsibility. *Anderson* v. *Albertstamm,* 176 Mass. 87. *Murphy* v. *Marston Coal Co.* 183 Mass. 385, 388. *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527. *Delaney* v. *Framingham Gas, Fuel & Power Co.* 202 Mass. 359, 365. The horses were attended throughout by an agent of the plaintiff, and under section five, where the "animals are accompanied by the owner or an attendant in his employ, the following further conditions shall apply, viz: The Shipper agrees to load, transship and unload said animals at his own risk, the Express Company furnishing the necessary laborers to assist. The Shipper shall take care of, feed and water said animals while being forwarded or transported, whether delayed in transit or otherwise, and the Express Company shall not be under any liability of duty with reference thereto except in the actual forwarding thereof. The Shipper further undertakes to see that all doors and openings in the cars in which said animals are shipped are at all times so closed and fastened as to prevent the escape of any of said animals or injury thereto, . . . resulting from open doors or defective ventilation." If the horses "were in the car without food or water for long periods," as the question in part assumes and as the jury could find, the duty of supplying them with sufficient and proper sustenance devolved on the plaintiff.

It was a question of fact however whether the horses had contracted colds or pneumonia or purpura through the defendant's negligence as alleged in the declaration and set forth in the specifications. *Sager* v. *Portsmouth, S. & P. & E. Railroad,* 31 Maine, 228. *Feinberg* v. *Delaware, Lackawanna & Western Railroad,* 23 Vroom, 451. *Southern Pacific Co.* v. *Arnett,* 50 C. C. A. 17, 4 R. C. L. Carriers, § 348, and cases cited. The record shows and without any objection being made or exception taken by the defendant, the judge stated in his instructions, "I do not understand there is any controversy here between the parties but that this was intended to be an express shipment of horses." And there was evidence which warranted the jury in finding that the transportation had

been unnecessarily delayed, and the car allowed to remain on side tracks for unreasonably long periods, exposing the horses to severe cold weather, and that instead of being shipped through from Chicago they were unloaded and reshipped in Cleveland, Buffalo and Albany. The jury, notwithstanding the erroneous admission of the question, were accurately instructed, that "You will find a provision in the bill of lading that where horses are to be accompanied by an attendant—and they were to be in this case—within that clause, the care of the horses rests with the attendant and not with the defendant; and I do not understand there is any claim made by the plaintiff in this case that there was any lack of care of that kind on the part of the defendant. The complaint of the plaintiff . . . is, that there were unreasonable delays in the course of transshipment, and that those unreasonable delays and the keeping of the horses upon the side tracks . . . subjected them to a danger from which they suffered, the danger of the reduction of their resistance to disease, and rendering them incapable of resisting as well as they otherwise might, and so leading to the actual contraction of disease by them due to the delay under the circumstances of climate and everything else at the time of this shipment." And at the close of the charge and after conference with counsel the judge further said: "If the jury find that the horses in this shipment were accompanied by an attendant in the employ of the shipper under the terms of the contract of shipment, and if the shipper agreed that this attendant should load, transship and unload said horses at his own risk, and further if disease was contracted by the horses while in the process of being loaded, transshipped or unloaded the defendant is not liable." To which instructions the defendant did not except. We are therefore of opinion that "the error complained of has not injuriously affected the substantial rights" of the defendant, and a new trial on this ground should not be granted. St. 1913, c. 716, § 1.

The defendant's fourth request is sufficiently covered by the instructions. The bill of lading having contained no limit of time for completion of the transportation, the defendant was required to perform within a reasonable time. The jury were told to consider the mode of conveyance, the distance, the nature of the shipment, the season of the year, the conditions of the weather, and the means of transportation and to determine whether the

defendant had used reasonable diligence or whether it had been guilty of inexcusable delay.

The seventeenth request also was substantially given. The jury were accurately instructed, "You have got to get at what were reasonable conditions, what did actually take place. Did the defendant and its servants do what a reasonably prudent and careful man would have done to carry out the contract which it had undertaken, which was to deliver these horses within a reasonable time, and 'reasonable time' meaning for the kind of shipment which the parties contemplated at the time the horses were delivered to the defendant to be shipped?" *Marshall* v. *Boston & Worcester Street Railway,* 195 Mass. 284, 286, 287. *Colsch* v. *Chicago, Milwaukee & St. Paul Railway,* 149 Iowa, 176. *Wilke* v. *Illinois Central Railroad,* 153 Iowa, 695.

The exceptions accordingly should be overruled.

*So ordered.*