### HINES, Director General of Railroads, v. DAHN.[*]

(Circuit Court of Appeals, Eighth Circuit. August 2, 1920.)

#### No. 5514.

1. **Railroads ⊂══5½, New, vol. 6A Key-No. Series—Federal control extends to only physical properties; "carriers;" "systems of transportation."**

    Within Act Aug. 29, 1916 (Comp. St. § 1974a), Federal Control Act March 21, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), Act Feb. 28, 1920, § 206g, and the proclamation of the President of Dec. 26, 1917, taking control of the railroads, the "systems of transportation" and the "carriers" mentioned therein, control of which was taken by the United States, are the physical properties of the various railroads, not the corporation owning or operating them.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Carriers.]

2. **Railroads ⊂══5½, New, vol. 6A Key-No. Series—Suits arising from federal control are against government.**

    Under Federal Control Act March 21, 1918, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), authorizing actions and suits against carriers under federal control, and the orders of the Director General requiring such suits to be brought against him, a suit against the Director General is against him in his capacity as agent of the United States, not against the corporations which own the railroads.

3. **Statutes ⊂══219—Interpretation by official charged with execution entitled to respect.**

    General Order No. 50 of the Director General of Railroads, requiring suits growing out of federal control of railroads to be brought against the Director General and not otherwise, is an interpretation of the laws regulating federal control of railroads by the department of the government charged with execution thereof, which is regarded by the courts with great respect.

4. **Master and servant ⊂══389—Compensated federal employé can derive no personal benefit from recovery from wrongdoer.**

    Under the federal Employés' Compensation Act (Comp. St. §§ 8932a–8932uu), requiring an employé receiving compensation thereunder to assign to the government his claim against another person for injuries, or requiring the application of any sums acquired by him to the payment of compensation, the employé who recovers compensation can receive no personal benefit from a recovery against another person who caused the injury.

5. **Master and servant ⊂══351—Federal employé electing to receive compensation cannot recover for negligence of Director General.**

    A mail clerk employed by the United States, electing to receive compensation under the federal Employés' Compensation Act (Comp. St. §§ 8932a–8932uu) for injuries caused by the negligence of the Director General of Railroads, cannot thereafter recover against the Director General,

---

⊂══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[*]Certiorari granted 254 U. S. ——, 41 Sup. Ct. 147, 65 L. Ed. ——.

though he might have elected to recover from the Director General, instead of applying for compensation.

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Action by Arthur J. Dahn against Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to dismiss the complaint.

See, also, 256 Fed. 549.

F. H. Helsell, of Ft. Dodge, Iowa (C. A. Helsell, of Ft. Dodge, Iowa, W. S. Horton, of Chicago, Ill., and Nelson & Duffy, of Dubuque, Iowa, on the brief), for plaintiff in error.

W. A. Smith, of Dubuque, Iowa (D. J. Lenehan and L. G. Hurd, both of Dubuque, Iowa, on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. Defendant in error, hereafter plaintiff, brought this action against Illinois Central Railroad Company and the Director General of Railroads, hereafter defendant, to recover damages for personal injuries alleged to have been caused by the negligent operation of said railroad. Plaintiff recovered a verdict against the defendant, the action having been dismissed as to the railroad company. Defendant brings error.

The first contention made by counsel for defendant is that the plaintiff cannot maintain this action, for the reason that it is in legal effect an action against the United States, and the plaintiff as an employé of the United States had prior to the commencement of the action applied for and received the benefits of an act to provide compensation for employés of the United States suffering injuries while in the performance of their duties. 39 Stat. 742 (Comp. St. §§ 8932a–8932uu). The facts material to this contention as they appear in the record are as follows: On May 29, 1918, plaintiff was a railroad mail clerk engaged in the performance of his duties as such while riding in a mail car composing a part of train No. 11, of the Illinois Central Railroad Company, then running over the track of said company, under the management and control of defendant. On said date and while he was so engaged said train was derailed and wrecked by plunging through a bridge composing a part of the roadbed of said Illinois Central Railroad Company, near Aplington, Iowa, and by reason thereof he was seriously and permanently injured. Division V of defendant's answer contains the following allegation:

"That under the act for compensation for the employés of the United States aforesaid, this plaintiff has made application in the manner provided by said act for compensation under said act, and this defendant is informed and believes and charges that such application has been affirmatively acted upon and said employé has the benefit of all the provisions of said Compensation Act."

This allegation of the answer was admitted by paragraph 3 of plaintiff's demurrer to said answer, the demurrer being sustained. In

subdivision 2 of said paragraph 3 in addition to the formal demurrer plaintiff also stated:

"That even if it be true that plaintiff has been paid compensation under the act to provide compensation for employés of the United States, such fact does not constitute any defense to this action, said act not purporting to furnish an exclusive remedy to plaintiff, but, on the contrary, expressly providing for the maintenance of an action of this character."

On the record as it stands, and in view of the fact that at the trial the case was treated by court and counsel as if the plaintiff had applied for and accepted the benefits of the Compensation Act above referred to, the case must be treated here in the same way. The first question therefore to be considered is: Was plaintiff's action in legal effect one against the United States?

[1] By chapter 418, 1st Sess. 64 Cong., approved August 29, 1916, 39 Stat. 645 (Comp. St. § 1974a), it is provided:

"The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

Pursuant to the authority thus given, the President on December 26, 1917 (40 Stat. 1733), issued a proclamation containing the following language:

"Now, therefore, I, Woodrow Wilson, President of the United States, under and by virtue of the powers vested in me by the foregoing resolutions and statute, and by virtue of all other powers thereto me enabling, do hereby, through Newton D. Baker, Secretary of War, take possession and assume control at 12 o'clock noon on the twenty-eighth day of December, 1917, of each and every system of transportation and the appurtenances thereof located wholly or in part within the boundaries of the continental United States and consisting of railroads, and owned or controlled systems of coastwise and inland transportation, engaged in general transportation, whether operated by steam or by electric power, including also terminals, terminal companies and terminal associations, sleeping and parlor cars, private cars and private car lines, elevators, warehouses, telegraph and telephone lines and all other equipment and appurtenances commonly used upon or operated as a part of such rail or combined rail and water systems of transportation, to the end that such systems of transportation be utilized for the transfer and transportation of troops, war material and equipment, to the exclusion so far as may be necessary of all other traffic thereon, and that so far as such exclusive use be not necessary or desirable, such systems of transportation be operated and utilized in the performance of such other services as the national interest may require and of the usual and ordinary business and duties of common carriers.

"It is hereby directed that the possession, control, operation and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads. * * *

"Except with the prior written assent of said Director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director may, by general or special orders, otherwise determine."

On March 21, 1918, Congress passed an act generally known as the Federal Control Act, being chapter 25, 2d Sess. 65th Cong. 40 Stat. 451 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p). Among other provisions of said act are the following:

Section 1 (section 3115¾a): "That the President, having in time of war taken over the possession, use, control, and operation * * * of certain railroads and systems of transportation (called herein carriers)." "That any railway operating income accruing during the period of federal control in excess of such just compensation shall remain the property of the United States."

. Section 6 (section 3115¾f): "That the sum of $500,000,000 is hereby appropriated, out of any moneys in the treasury not otherwise appropriated, which, together with any funds available from any operating income of said carriers, may be used by the President as a revolving fund for the purpose of paying the expenses of the federal control."

Section 10 (section 3115¾j): "That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier; and any action which has heretofore been so transferred because of such federal control or of any act of Congress or official order or proclamation relating thereto shall upon motion of either party be retransferred to the court in which it was originally instituted. But no process, mesne or final, shall be levied against any property under such federal control."

Section 12 (section 3115¾l): "That moneys and other property derived from the operation of the carriers during federal control are hereby declared to be the property of the United States. Unless otherwise directed by the President, such moneys shall not be covered into the treasury, but such moneys and property shall remain in the custody of the same officers, and the accounting thereof shall be in the same manner and form as before federal control."

## Act Feb. 28, 1920, § 206g, 262 Fed. 340, reads as follows:

"No execution or process, other than on a judgment recovered by the United States against a carrier, shall be levied upon the property of any carrier where the cause of action on account of which the judgment was obtained grew out of the possession, use, control, or operation of any railroad or system of transportation by the President under federal control."

The first provision quoted above from the Federal Control Act recites that the President, having in time of war taken over the possession, use control and operation of certain railroads and systems of transportation, called herein carriers, and thus makes it plain in our opinion that Congress correctly interpreted the original authority given the President, and also his proclamation to the effect that it was the physical railroads and systems that the President took possession of, and the Federal Control Act declares that these physical railroads and systems shall be called in said act "carriers." The original authority of the President authorized him to take possession and assume control

of any system or systems of transportation. In his proclamation the President declared that he did take possession of each and every system of transportation and the appurtenances thereof. In view of the language conferring the original authority of the President and the language of the proclamation, the word "railroads," in the Federal Control Act, must be construed to mean the same thing as systems of transportation.

We do not think there can be any doubt about the meaning of the words "railroads and systems of transportation" as used in the several acts of Congress and the proclamation of the President. In our judgment they refer only to the physical properties which constituted the system or systems. The system is composed of the roadbed, tracks, engines, cars, and other appurtenances which are used in the transportation of passengers and freight from one place to another. The system is entirely distinct from the corporate entity which may own or manage the system. The President had no authority, nor did he pretend by the language of his proclamation, to take over the railroad corporation or corporations, which owned the several systems. The whole Federal Control Act is opposed to any such interpretation, because it provides for the payment to the different corporations of a compensation for the use of the several systems and elaborate provisions are made for the protection of the rights of both parties. The United States owned no railroad stock and did not seek to obtain control of the railroad corporations. The fundamental idea underlying the decision of the United States to take control of the systems was that it was necessary so to do in order that the great task of transporting troops, munitions, and supplies might be carried on by the different systems to the exclusion of all other traffic if necessary. Any further control than to accomplish this object was not needed, sought, or obtained. The excerpt above quoted from the proclamation of the President, to the effect that no attachment by mesne process or execution should be levied on or against the property used by any of said transportation systems in the conduct of their business as common carriers, but that suits might be brought by and against such carriers and judgment rendered as hitherto until and except so far as said Director General might by general or special orders otherwise determine, clearly uses the word "carriers" as meaning the same as transportation systems, because it was only such systems whose property could not be levied on without the written assent of the Director General. Whoever has the management, control, and operation of a transportation system which is engaged as a common carrier in the transportation of passengers and freight from one place to another is the carrier, so far as liability is concerned for negligent operation.

[2] When we come to section 10 of the Federal Control Act, we think that there ought not to be the confusion and want of harmony in the decisions in regard to its meaning, which seems to exist as to the question now being considered. The Federal Control Act starts out by plainly declaring that the railroads and systems of transportation which the President had taken possession of should in said act be called "carriers." According to section 10, the "carriers"—that is, the physical

railroad systems—shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of the act, or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgment rendered as now provided by law, and in such suits no defense shall be made upon the ground that the carrier transportation system is an instrumentality or agency of the federal government. To decide that the words "carrier" and "carriers," in section 10, mean the corporate entity, in the present case the Illinois Central Railroad Company, is not only to go in opposition to the plain provision of law conferring authority upon the President and the plain words of his proclamation, but also to what Congress has decided to be the true meaning of the words. It seems plain to us that the President had authority and did, through Newton D. Baker, Secretary of War, take possession and assume control of each and every system of transportation and the operation thereof; that the possession, control, operation, and utilization of such transportation systems undertaken by the President was directed by him to be exercised by and through the Director General. It would be unconstitutional and contrary to the law of the land to hold that the railroad corporation, in this case the Illinois Central Railroad Company, as a corporate entity should be liable for an act done or omitted to be done in the operation of the transportation system by another party over which it had no authority or control. Zeigler v. S. & N. A. R. R. Co., 58 Ala. 594; Mobile Light & R. R. Co. v. Copeland & Sons, 15 Ala. App. 235, 73 South. 131; Bank of Columbia v. Okley, 4 Wheat. 235, 4 L. Ed. 559; Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. 111, 28 L. Ed. 232; Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; Leeper v. Texas, 139 U. S. 462, 11 Sup. Ct. 577, 35 L. Ed. 225; Giozza v. Tiernan, 148 U. S. 657, 13 Sup. Ct. 721, 37 L. Ed. 599; Jones v. Brim, 165 U. S. 180, 17 Sup. Ct. 282, 41 L. Ed. 677; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. 448, 44 L. Ed. 597; 6 Rul. Cas. Law, pp. 433, 446, embracing paragraphs 430 to 442 on Constitutional Law.

Moreover section 206g, supra, Act Feb. 28, 1920, specially provides that no execution shall issue against the property of the carrier (corporation), when the cause of action on account of which the judgment was obtained grew out of federal control. We think the effect of section 10, so far as the bringing of suits is concerned, was to waive the sovereignty of the United States so far as any suits that were authorized to be brought were concerned and to allow persons injured through negligence of the carrier which in the present and similar cases would be the Director General, to bring suits against the carrier the same as if the transportation systems were not under federal control. If it was the corporate entity, in this case, the Illinois Central Railroad Company, which was to be liable for the negligence of the Director General, why did Congress provide in the Federal Control Act and the President in his proclamation that no execution should issue on the judgment? This is a provision not found in legislation in regard to litiga-

ton between private parties, but in litigation between private parties and the sovereignty, extending also to cities and other corporations exercising governmental functions. We are of the opinion that the present action was one in effect against the United States and that they will be obliged to pay the judgment below if sustained. The Director General is sued the same as a receiver. He is not personally liable, but the government is.

[3] General Order No. 50, promulgated by the Director General, October 28, 1918, directing that actions at law, suits in equity and other proceedings thereafter brought in any court based on contract binding upon the Director General, claim for death or injury to person, or for loss and damage to property arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General, which action, suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General, and not otherwise, is an interpretation of the laws regulating Federal Control of Railroads by that department of the government charged with the duty of executing the same, and such interpretation has always been regarded by the courts with great respect. U. S. v. Cerecedo Hermanos y Compania, 209 U. S. 338, 28 Sup. Ct. 532, 52 L. Ed. 821. There are well-reasoned cases in the federal courts sustaining the views herein expressed. They are Rutherford v. Union Pac. (D. C.) 254 Fed. 880; U. S. v. Kambeitz (D. C.) 256 Fed. 247; Mardis v. Hines (D. C.) 258 Fed. 945; Haubert v. Baltimore & O. R. Co. (D. C.) 259 Fed. 361; Nash v. Southern Pacific Co. (D. C.) 260 Fed. 280; Westbrook et al. v. Director General of Railroads (D. C.) 263 Fed. 211; Hatcher & Snyder v. A., T. & S. F. Ry. Co. (D. C.) 258 Fed. 952; Southern Cotton Oil Co. v. Atlantic Coast Line Ry. Co. and Wade v. Sea Board Air Line Co. (D. C.) 257 Fed. 138; Sagona v. Pullman Co. (Sup.) 174 N. Y. Supp. 536; Oyler v. C., C., C. & St. L. Ry., 17 Ohio Law Rep. 356; Public Service Commission v. New England Telephone & Telegraph Co., 232 Mass. 465, 122 N. E. 567, 4 A. L. R. 1662; Macleod v. New England Telephone & Telegraph Co., 250 U. S. 195, 39 Sup. Ct. 511, 63 L. Ed. 934; N. P. Railroad Co. v. State of North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897. There are other decisions construing section 10 as providing for the bringing of actions against the carrier corporation just the same as if no federal control had taken place. The cases cited as deciding that it is the carrier corporation that must be sued are Postal Tel. Co. v. Call, 255 Fed. 850, 167 C. C. A. 178; Jensen v. L. V. R. Co. (D. C.) 255 Fed. 795; Johnson v. McAdoo (D. C.) 257 Fed. 757; Witherspoon v. Postal, etc., Co. (D. C.) 257 Fed. 758; The Catawissa (D. C.) 257 Fed. 863; Dampskibs v. Hustis (D. C.) 257 Fed. 862; Lavalle v. N. P. R. Co., 143 Minn. 74, 172 N. W. 918, 4 A. L. R. 1659; Gowan v. McAdoo, 143 Minn. 227, 481, 173 N. W. 440, 443; Palyo v. N. P. R. Co. (Minn.) 175 N. W. 687; Ringquist v. D., M. & N. R. Co. (Minn.) 176 N. W. 344; McGregor v. G. N. R. Co. (N. D.) 172 N. W. 841, 4 A. L. R. 1635; Franke v. C. & N. W. R. Co. (Wis.) 173 N. W. 701; M. P. R. Co. v. Ault (Ark.) 216 S. W. 3; Lancaster v.

Keebler (Tex. Civ. App.) 217 S. W. 1117; Clapp v. Am. Ex. Co, 234 Mass. 174, 125 N. E. 162; Owens v. Hines (N. C.) 100 S. E. 617.

It would serve no useful purpose to review these cases. It is conceded that most of them declare the law contrary to the conclusion reached in this case, but the reasoning upon which the decisions are based is not persuasive.

[4] The next question for consideration is as to whether the plaintiff having applied for and received the benefits of the act to provide compensation for employés of the United States suffering injuries while in the performance of their duties is barred from maintaining this suit. Section 1, c. 458, 1st Sess. 64th Cong., 39 Stat. 742 (Comp. St. § 8932a), in part reads as follows:

"That the United States shall pay compensation as hereinafter specified for the disability or death of an employé resulting from a personal injury sustained while in the performance of his duty."

Section 15 (section 8932h) provides:

"That every employé injured in the performance of his duty, or some one on his behalf, shall, within forty-eight hours after the injury, give written notice thereof to the immediate superior of the employé. Such notice shall be given by delivering it personally or by depositing it properly stamped and addressed in the mail."

Section 16 (section 8932hh) specifies what the notice above mentioned shall contain. Section 17 (section 8932i) provides that unless the notice is given, or unless the immediate superior has actual knowledge of the injury, no compensation shall be allowed, but for any reasonable cause shown the United States Employé's Compensation Commission may allow compensation if the notice is filed within one year after the injury. Section 18 (section 8932ii) provides that no compensation shall be allowed to any person, except as provided in section thirty-eight, unless he or some one on his behalf shall within the time specified in section twenty make a written claim therefor, and such claim shall be made by delivering it at the office of the commission, or to any commissioner, or to any person whom the commission may designate, or by depositing it in the mail properly stamped and addressed to the commission, or to any person whom the commission may by regulation designate. Section 20 (section 8932jj) provides that all original claims for compensation for disability shall be made within 60 days after the injury, provided that the commission may allow original claims for compensation for disability to be made at any time within one year. Section 26 (section 8932mm) provides that, if an injury or death for which compensation is payable is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the commission may require the beneficiary to assign to the United States any right of action he may have to enforce such liability of such other person or any right he may have to share in any money or other property received in satisfaction of such liability of such other person or the commission may require said beneficiary to prosecute said action in his own name. If the beneficiary shall refuse to make such assignment, or to prosecute said action in his own name when required

by the commission, he shall not be entitled to any compensation under the act. The section last referred to then provides as follows:

"The cause of action when assigned to the United States may be prosecuted or compromised by the commission, and if the commission realizes upon such cause of action, it shall apply the money or other property so received in the following manner: After deducting the amount of any compensation already paid to the beneficiary and the expense of such realization or collection, which sum shall be placed to the credit of the employés' compensation fund, the surplus. if any, shall be paid to the beneficiary and credited upon any future payments of compensation payable to him on account of the same injury."

Section 27 (section 8932n) reads as follows:

"That if an injury or death for which compensation is payable under this act is caused under circumstances creating a legal liability in some person other than the United States to pay damages therefor, and a beneficiary entitled to compensation from the United States for such injury or death receives, as a result of a suit brought by him or on his behalf, or as a result of a settlement made by him or on his behalf, any money or other property in satisfaction of the liability of such other person, such beneficiary shall, after deducting the costs of suit and a reasonable attorney's fee, apply the money or other property so received in the following manner:

"(A) If his compensation has been paid in whole or in part, he shall refund to the United States the amount of compensation which has been paid by the United States and credit any surplus upon future payments of compensation payable to him on account of the same injury. Any amount so refunded to the United States shall be placed to the credit of the employés' compensation fund.

"(B) If no compensation has been paid to him by the United States, ne shall credit the money or other property so received upon any compensation payable to him by the United States on account of the same injury."

We have called attention to those provisions of the act which relate to injuries caused by other persons than the United States, for the reason that the plaintiff claims in this case that the Director General was the agent of the Illinois Central Railroad Company, and therefore the injury received by the plaintiff was caused by a person other than the United States. It plainly appears from the statute above quoted that whether the employé assigns his cause of action against a person other than the United States to the United States, and the same is prosecuted by said commission, or whether the employé prosecutes the cause of action himself, the employé gains nothing, but the whole recovery after deduction of the expense of litigation either goes into the compensation fund out of which employés are paid, or is retained by the employé and the amount thereof is credited to the United States on future payments. So that in any event the employé realizes nothing from the liability of a person other than the United States. In this very case the plaintiff would receive nothing, if he should collect his judgment other than his compensation under the Compensation Act.

[5] This discussion, however, is wholly futile, as a mere inspection of the law conferring power upon the President to take possession of the systems of transportation and his proclamation in acting under said law makes it so clear that the Director General was an agent of the United States and not of the railroad company that there is no basis for the contention of counsel for plaintiff. As we have before stated,

267 F.—8

the Director General was the agent of the United States, and this action is in legal effect against the United States.

The only question left is as to the right of the plaintiff to not only receive compensation under the Compensation Act, but also to sue the United States for the negligence causing his injuries. In other words, must the United States pay both compensation and damages for negligence to the same person for the same injury? Workmen's Compensation Acts are all alike as to the object sought to be attained, but they are so numerous and so varied as to details of administration that each act must be construed by itself. We are of the opinion that as to the United States the act in question is compulsory, if the employé gives the notice and files the claim in proper form according to the terms of the statute and the regulations of the commission. It is optional with the employé as to whether he will make a claim under the act or not. If he does not, in our opinion he would have a right to maintain the present action and prosecute the same to judgment, as we think that the United States as to this particular case by the Federal Control Act consented to be sued. But if the employé elects to receive the benefits of the Compensation Act and his claim is allowed, then he is barred from prosecuting his action for negligence against the United States. In other words, he must elect which of the two remedies he desires to pursue, and, having elected to pursue one, he may not pursue the other. The United States under the statute being bound to pay the plaintiff after the latter has elected to claim the benefits of the Compensation Act, the remedy afforded by the act is exclusive. Mitchell v. Louisville, etc., R. Co., 194 Ill. App. 77; McRoberts v. National Zinc Co., 93 Kan. 364, 144 Pac. 247; Shade v. Ash Grove Lime, etc., Co., 92 Kan. 146, 139 Pac. 1193; Piatt v. Swift, 188 Mo. App. 584, 176 S. W. 434 (Kansas Act); Middleton v. Texas Power, etc., Co., 108 Tex. 96, 185 S. W. 556. That the employé cannot recover both damages and compensation is sustained by the following cases: Barry v. Bay State St. Ry. Co., 222 Mass. 366, 110 N. E. 1031, 1032; Turnquist v. Hannon, 219 Mass. 560, 107 N. E. 443; Cripp's Case, 216 Mass. 586, 104 N. E. 565, Ann. Cas. 1915B, 828; Pawlak v. Hayes, 162 Wis. 503, 156 N. W. 464, L. R. A. 1917A, 392; McGarvey v. Independent Oil, etc., Co., 156 Wis. 580, 146 N. W. 895; Woodcock v. London, etc., R. Co., [1913] 3 K. B. 139, 6 Butterworth's Workmen's Compensation Cases, 471; Page v. Burtwell, [1908] 2 K. B. 758, 1 Butterworth's Workmen's Compensation Cases, 267; Oliver v. Nautilus Steam Shipping Co., [1903] 2 K. B. 639, 5 Minton-Senhouse's Workmen's Compensation Cases, 65; Huckle v. Council, 4 Butterworth's Workmen's Compensation Cases, 113 (affirmed 3 Butterworth's Workmen's Compensation Cases, 536, 26 T. L. R. 580); Mahomed v. Maunsell, 1 Butterworth's Workmen's Compensation Cases, 269; Murry v. North British R. Co., 41 Scottish Law Rep. 383; Mulligan v. Dick, 41 Scottish Law Rep. 77; Tong v. Great Northern R. Co., 4 Minton-Senhouse's Workmen's Compensation Cases, 40, 86 L. T. Rep. (N. S.) 802; Workmen's Compensation Acts; Corpus Juris Treatise.

We are of the opinion that upon principle and authority the plaintiff is barred from maintaining this action for negligence against the United States which makes it unnecessary to consider assignments of error relating to the trial of the case. Judgment below is reversed, and the case remanded, with directions to dismiss the complaint of the plaintiff. Leave is given to substitute the name of John Barton Payne in place of Walker D. Hines, Director General, if defendant is so advised. Act Feb. 28, 1920, § 206.