ALBERT LAVALLE v. NORTHERN PACIFIC RAILWAY
COMPANY.[1]

June 13, 1919.

No. 21,294.

**Railway — operation by Federal government — action for death or personal injury.**

> The act of Congress of March 21, 1918, providing for the operation of transportation systems while under Federal control, provides that actions at law may be brought against carriers and judgment rendered "as now provided by law." Order number fifty (50) issued by the Director General of Railroads October 28, 1918, required that actions for death or injury to person growing out of the possession, control or operation of any railroad by the director general shall be brought against the director general and not otherwise. Insofar as such order prohibits the maintenance of such an action against the railroad company, it is in conflict with the act of Congress of March 21, 1918,[2] and is void.

Action in the district court for Washington county to recover $15,000 damages for injuries received while a member of a section crew in defendant's employ. After the issuance of General Order No. 50, quoted in the opinion, defendant moved that the Director General of Railroads be substituted as defendant and that the action be dismissed as to the railroad company. The motion was granted, Searles, J. From the order dismissing the action against the Northern Pacific Railway Company and substituting William G. McAdoo, Director General of Railroads, as party defendant, plaintiff appealed. Reversed.

*John J. Keefe* and *T. D. Sheehan,* for appellant.
*Charles Donnelly* and *D. F. Lyons,* for respondent.

HALLAM, J.

On August 29, 1916, Congress enacted that:

"The president in time of war is empowered * * * to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as

[1]Reported in 172 N. W. 918.          [2][U. S. Comp. St. § 3115¾j].

may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable" (39 St. 645, U. S. Comp. St. 1918, § 1974a).

By proclamation dated December 26, 1917, the President took over the transportation systems of the country and ordered that:

"All transportation systems covered by said proclamation and order shall be operated as a national system of transportation, the common and national needs being in all instances held paramount to any actual or supposed corporate advantage."

Relative to actions and legal proceedings, the proclamation said:

"Except with the prior written assent of said Director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director may by general or special orders otherwise determine."

On March 21, 1918, Congress passed an act, "To provide for the operation of transportation systems while under Federal control." * * * The act was declared to be "emergency legislation enacted to meet conditions growing out of the war" * * * (Sec. 16). It recited that the President had "in time of war taken over the possession, use, control, and operation of certain railroads" (Sec. 1). It authorized the President to make all reasonable provisions not inconsistent with the acts of Congress "that he may deem necessary or proper for such Federal control" (Sec. 1), and, in addition to the powers expressly granted, gave to the President "such other and further powers necessary or appropriate to give effect to the powers and heretofore conferred" (Sec. 9), (40 St. 451, U. S. Comp. St. 1918, §§ 3115¾a, 3115¾p).

Section 10 provided:

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except insofar as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in

equity may be brought by or against such carrier and judgment rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. * * * But no process, mesne or final, shall be levied against any property under Federal control" (40 St. 456, U. S. Comp. St. 1918, §§ 3115¾a-3115¾j).

On October 28, 1918, the director general issued General Order Number 50 which recited that:

"Since the Director General assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during Federal control for which the said carrier corporations are not responsible, and it is right and proper that the actions, suits and proceedings hereinafter referred to, based on causes of action arising during or out of Federal control should be brought directly against the said Director General of Railroads and not against said corporation." And ordered "that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties and forfeitures." As to pending suits, the order provided that "the pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

This action was brought in September, 1918. After the issuance of Order Number 50, defendant moved that the Director General of Rail-

roads be substituted as defendant and that the action be dismissed as to the railroad company. The trial court granted the motion. Plaintiff appeals.

The assumption of Federal control was, in effect, a mobilization under one head of the persons and corporations engaged in the business of transportation as a means of meeting the emergencies imposed by a state of war. Vaughn v. State (Ala.) 81 South. 417. Viewed in this light, the assumption of control was without doubt within the power granted by the Constitution to the Federal government and was an appropriate instrumentality for carrying into effect the known powers of the government. Wainwright v. Pennsylvania R. Co. 253 Fed. 459; Knox v. Lee, 79 U. S. [12 Wall.] 457, 539, 20 L. ed. 287. We do not question the power of Congress to enact the laws above recited, nor the power of the President, directly or through the director general, to issue the orders he has issued, if not inhibited by congressional legislation.

It seems clear, however, that if the act of Congress and an order of the director general are in conflict the act of Congress must prevail. A majority of the court are of the opinion that section 10 of the act of March 21, 1918, gives to one having a cause of action arising out of the operation of a railroad while under Federal control the right to sue the railroad company thereon, and that Order Number 50 insofar as it denied to a plaintiff the right to pursue the railroad company was beyond the power of the director general and was void.

Order reversed.