LANCASTER et al. v. KEEBLER.
(No. 2194.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 28, 1920. Rehearing Denied Feb. 5, 1920.)

1. MASTER AND SERVANT &#9756;278(13)—FAILURE TO GUARD EMERY WHEEL NEGLIGENCE.

In action by operator of emery wheel for injuries due to piece of metal striking his eye, the negligence alleged being failure to provide a guard on emery wheel to prevent particles of iron from flying therefrom when iron pipes were being ground, evidence *held* to support verdict for plaintiff.

2. TRIAL &#9756;260(1)—REPETITION OF INSTRUCTIONS UNNECESSARY.

It was not reversible error to refuse special charges substantially covered by the main charge.

3. DAMAGES &#9756;132(14)—FOR PERMANENT INJURIES TO EYE $3,500 NOT EXCESSIVE.

For permanent injuries to an eye resulting from piece of metal thrown from pipe being ground on emery wheel, *held*, verdict of $3,500 was not excessive.

4. RAILROADS &#9756;5½, New, vol. 6A Key-No. Series—GOVERNMENT CONTROL NOT BAR TO RECOVERY AGAINST RECEIVERS FOR INJURIES TO EMPLOYÉ.

In action against railroad receivers for injuries to an employé, assigned error based on refusal to instruct a verdict in favor of the receiver upon the ground that the liability is against the Director General of Railroads will be overruled.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by H. V. Keebler against J. L. Lancaster and others, receivers. Judgment for plaintiff, and defendants appeal. Affirmed.

Appellee was a machinist in the shops of the Texas & Pacific Railway at Marshall and

---

was operating an emery wheel grinding away the charred ends of certain pipes called superheater units. A flying spark or piece of metal from the pipe being ground struck the appellee in the right eye, permanently injuring it. He sues for damages, alleging that the injury was caused by negligent failure to provide and place a guard or shield on the emery wheel to confine the particles of iron and prevent them from flying therefrom when the iron pipes were being ground. The defendant answered by general denial and a plea of contributory negligence in the manner and way in which the plaintiff held and used the wheel. The appellant might specially plead that the plaintiff had no right to judgment against him as receiver, because the government of the United States was operating the road at the time of the injury sued for. There was a trial before a jury, and verdict as follows:

"We, the jury, find in favor of the plaintiff in the sum of $15,000.00. We also find that the plaintiff was guilty of contributory negligence and we diminish the above amount by the amount of $11,500.00, leaving the amount we find in favor of the plaintiff to be the sum of $3,500.00."

There is evidence to support the verdict of the jury. At the time he was injured, the appellee was using an emery wheel propelled by compressed air, polishing off certain superheater units to be repaired. The superheater units are pipes fastened together in a coil and that go inside the flue of the engine for superheating the steam before it goes into the cylinders. The motor consisted of a frame about two feet long with an emery wheel six or eight inches in diameter on one end and a rubber hose on the other end which supplied compressed air for the operation of the wheel. The operator would hold the emery wheel with one hand, with one finger on the trigger to regulate the supply of compressed air, and could stop or start the motor with this hand. There is a guard, or fender, that goes over the emery wheel to protect the eyes of the operator against the particles of iron that fly off as the wheel revolves. While using the emery wheel the operator also uses goggles on his eyes. The company provides goggles and instructs the operator to wear them. The appellee wore the goggles, but there is no description in the evidence of the kind of goggles worn on this occasion. The appellee said:

"The wheel I was using when I got hurt I got from over at the reclamation plant. I went and got it by order of Mr. Wallace, the foreman. I went with my helper to get the motor myself by Mr. Wallace's instruction. He gave me a written order, and I went to the reclamation plant and got the motor. The motor I got did not have a shield on it. When we came back to the shop, I went to Mr. Wallace and showed it to him. Told him I did not have

any guard on it. He told me to take it to the tool room and there get a guard put on it. I went to the toolroom to get a guard put on it, and the foreman there said he did not have any for it. Then I went back to Mr. Wallace and told him what occurred at the toolroom, and he said that was the best he could do, and that I would have to use that and be as careful as I could, and that as soon as any other motor was turned in with a guard on it I could have my helper get it from the toolroom and turn that one in. I went on using the machine without a guard. I thought that by using the wheel careful enough maybe I could get by with it."

Foreman Wallace does not admit, but denies, that his attention was called to the fact that there was no guard on the emery wheel. The emery wheel cuts away the iron where the emery comes in contact with the pipes, and, according to the appellee, the particles are thrown off in different directions as the wheel revolves; and, according to some other witnesses, the particles from the wheel would fly in the direction of the plane of the wheel, and the proper place for the operator to have his eye is at one side of the wheel.

F. H. Prendergast and Hall, Brown & Hall, all of Marshall, for appellants.

Jones, Sexton and Casey & Jones, of Marshall, for appellee.

LEVY, J. (after stating the facts as above). [1-4] The evidence showed that the appellee was operating an emery wheel without a guard or shield on it, and that the guard or shield was a necessary part of the wheel. The court's charge required of the jury, before they could return a verdict for the plaintiff, to find as a fact: (1) That the failure to equip the wheel with a guard or shield was, under all the evidence, negligence; and (2) that the negligent failure to have the guard on the wheel was the proximate cause of plaintiff's being injured. The evidence presented these issues. And any question in the evidence as to whether or not the plaintiff was guilty of contributory negligence, or whether the plaintiff would have been injured solely through his own negligence even though the wheel had been equipped with a guard, was, we think, sufficiently submitted in the court's main charge. The special charges were substantially covered by the main charge. Therefore we think that the refusal to give the several special charges requested does not constitute reversible error. The verdict as to amount is not excessive considering the seriousness of the injury. The first assigned error is based on the refusal to peremptorily instruct a verdict in favor of the receiver upon the ground that the liability is, and consequently the judgment should be, against only the Director General of Railroads. The assignment is overruled. Lavalle v. Ry. Co. (Minn.) 172 N. W. 918; Ry.

Co. v. Steele, 180 Ky. 290, 202 S. W. 878; Johnson v. McAdoo (D. C.) 257 Fed. 757.

The cross-assignment of error by appellee is overruled.

The judgment is affirmed.