HOUSTON & T. C. R. CO. et al. v. LONG.
(No. 1056.)

(Court of Civil Appeals of Texas. El Paso. Feb. 12, 1920.)

1. RAILROADS ⊜═5½, New, vol. 6A Key-No. Series—EXCLUSIVE CONTROL VESTED IN DIRECTOR GENERAL BY FEDERAL CONTROL ACT.

Under the Federal Control Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), the possession, control, and management of railroads was completely and exclusively vested in the Director General.

2. RAILROADS ⊜═5½, New, vol. 6A Key-No. Series — RAILROAD. NOT LIABLE FOR EMPLOYÉ'S INJURY DURING FEDERAL CONTROL.

During the period of government control of railroads under the Federal Control Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), relation of master and servant did not exist between an employé and the railroad company, and the company was not liable for injury to employé sustained during such a period.

3. APPEAL AND ERROR ⊜═1061(4)—REFUSAL TO DIRECT VERDICT FOR RAILROAD ON HOLDING DIRECTOR GENERAL LIABLE, HARMLESS.

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries to railroad employé sustained at a time when the Director General was in exclusive control under Federal Control Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), refusal to direct verdict for railroad company joined as defendant with Director General, was harmless, where the judgment for the employé expressly provided that judgment was payable by the United States.

4. MASTER AND SERVANT ⊜═107(3)—RULE REQUIRING ORDINARY CARE TO PROVIDE SAFE PLACE INAPPLICABLE TO REPAIRS NECESSARY TO MAKE PLACE SAFE.

The rule making it the master's duty to use ordinary care to provide a safe working place has no application where the servant is engaged for the very purpose of repairing and making a dangerous place safe.

5. MASTER AND SERVANT ⊜═107(3)—STOPPING LEAK IN RAILROAD WATER TANK NOT REPAIRS WITHIN RULE AS TO PLACES DANGEROUS.

A railroad employé who under orders of his foreman, went upon top of a water tank to pour cinders into tank to stop a leak, could recover for injuries sustained on collapse of tank because of its defective condition on theory that employer was negligent in failing to provide safe place in which to work; the rule that employer is not required to use ordinary care to provide a safe working place where servant is engaged for the very purpose of repairing and making a dangerous place safe being inapplicable to such case.

6. MASTER AND SERVANT ⊜═278(3)—FINDING OF NEGLIGENCE IN FAILURE TO PROVIDE SAFE PLACE WARRANTED.

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries to railroad employé from collapse of decayed and defective water tank while he was on top pouring cinders into it to stop a leak, evidence held to support a finding of negligence in failing to provide him with a safe place in which to work.

7. MASTER AND SERVANT ⊜═217(13) — RISK FROM FAILURE TO FURNISH SAFE PLACE NOT ASSUMED.

The servant has a right to assume that the master has discharged his duty in providing a safe working place, and does not assume the risks arising from master's failure to so do, unless he knows of such failure and the attendant

risks, or in the ordinary discharge of his own duty must have necessarily acquired the knowledge.

**8. APPEAL AND ERROR ☞930(3) — FINDING PRESUMED TO HAVE BEEN MADE BY COURT IN SUPPORT OF JUDGMENT IN ACTION TRIED UPON SPECIAL ISSUES.**

In action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries to a railroad employé from collapse of a tank on top of which he had gone to stop leaks, where jury found that employé did not know of dangerous condition of the tank, but made no finding as to obvious defective condition, and where there was evidence to support a contrary finding, it will be presumed, under Rev. St. 1911, art. 1985, in favor of judgment for employé, that such contrary finding was made by the court, where case was tried on special issues.

**9. MASTER AND SERVANT ☞204(1)—RISK OF INJURY FROM COLLAPSE OF WATER TANK NOT ASSUMED.**

A railroad employé who, under foreman's orders to so do, went on top of water tank to pour cinders into it to stop leaks, without knowledge of the defective condition of the tank, did not assume the risk of injury by the collapse of the tank so as to prevent recovery under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

**10. MASTER AND SERVANT ☞235(7) — RAILROAD EMPLOYÉ NOT REQUIRED TO ASCERTAIN IF WATER TANK WAS SAFE.**

An employé who was ordered by his foreman to go upon a railroad water tank to pour cinders into it to stop leaks was not required to ascertain if the tank was a safe place to go upon to perform his task.

**11. APPEAL AND ERROR ☞994(2)—CREDIBILITY OF WITNESSES FOR JURY.**

It was the province of the jury to pass upon the credibility of the witnesses.

**12. MASTER AND SERVANT ☞281(5)—FINDING THAT RAILROAD EMPLOYÉ DID NOT KNOW OF DEFECTIVE CONDITION OF WATER TANK WARRANTED.**

In a railroad employé's action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for injuries from collapse of a tank evidence *held* sufficient to sustain the jury's finding that plaintiff in going on tank did not know of its dangerous and defective condition.

**13. MASTER AND SERVANT ☞101, 102(8) — DUTY TO PROVIDE SAFE PLACE DEFINED.**

It is the employer's duty to use ordinary care to provide employé a safe working place.

**14. TRIAL ☞114—COUNSEL'S ARGUMENT TO JURY AS TO WHAT ANSWER THEY SHOULD GIVE TO SPECIAL INTERROGATORY HELD IMPROPER.**

In action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for injuries to a railroad employé, statement by plaintiff's counsel that jury should answer certain special verdict "No," since an answer "Yes" would make it appear that jury thought that employé was a fool in going upon tank on which he had been working at time of injury, *held* improper.

**15. TRIAL ☞125(3)—ARGUMENT OF COUNSEL THAT NO ONE KICKED CORPORATION DEFENDANT LIKE IT KICKED PLAINTIFF IS IMPROPER.**

In action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for injuries to a railroad employé, statement of employé's counsel, in argument to jury, that he did not know whether the railroad company had any soul or not, and that no one kicked it about like it was kicking the plaintiff, *held* an appeal to the passion and prejudice of the jury and improper.

**16. EVIDENCE ☞477(3), 501(2)—OPINION AS TO PER CENT. OF USE OF LEGS AND ARMS OF INJURED PARTY INADMISSIBLE IN ABSENCE OF FOUNDATION SHOWING WITNESS QUALIFIED.**

In a personal injury action testimony that plaintiff at time of trial had only 75 per cent. use of his legs and arms, *held* inadmissible as against objection that it was opinion testimony by witness not qualified, and that facts upon which opinion was based had not been stated by witness.

**17. APPEAL AND ERROR ☞1060(1)—QUESTION OF WHETHER IMPROPER ARGUMENT IS REVERSIBLE ERROR IN DISCRETION OF COURT.**

Whether improper argument by plaintiff's counsel in address to the jury is reversible error depends upon the facts in each case and involves the exercise of certain discretion by the court.

**18. APPEAL AND ERROR ☞1050(1)—WHETHER IMPROPER ADMISSION OF OPINION EVIDENCE IS REVERSIBLE ERROR IN DISCRETION OF COURT.**

Question of whether improper admission of opinion testimony without foundation being made by showing qualification of witness, and whether the statement of facts upon which opinion is based is ground for reversal, depends on facts in the case, and involves the exercise of certain discretion by the court.

Appeal from District Court, Limestone County; A. M. Blackmon, Judge.

Suit by E. F. Long against Houston & Texas Central Railroad Company and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, C. S. Bradley and O. M. Wroe, both of Groesbeck, and Stribling & Stribling, of Waco, for appellants.

Wm. Kennedy, J. E. Bradley, and W. T. Jackson, all of Groesbeck, for appellee.

HIGGINS, J. Appellee Long brought this suit against appellants to recover damages on account of alleged personal injuries sustained by him on June 27, 1918, while employed by the appellants as a member of the bridge gang on appellants' railroad, which

injuries were caused by the falling of the water tank used by appellants at its station Thornton, for the purpose of supplying water to its locomotives used in operating trains on the Houston & Texas Central Railroad. Appellee, in company with another member of the bridge gang, was directed to go to Thornton and stop some leaks in the water tank which were of such a nature as to seriously impair the usefulness of the tank. After the tank had been filled with water, the appellee went upon top of the tank for the purpose of pouring cinders into the tank in such a manner that they would be drawn by the force of the water into the openings and thereby stop the leaks. While on top of the tank engaged in this work the tank collapsed and fell, carrying appellee with it, causing the injuries complained of. It is alleged by appellee that the tank was old, and that the floor or bottom of the tank where it entered or joined the sides or wall, as well as the staves where the floor joined them, had become rotten, decayed, and unsafe, and the supports which held the tank up had also become rotten, which condition was known to appellants but not known to appellee.

The negligence alleged as cause for recovery was that the appellants failed to use ordinary care in furnishing the appellee a safe place to work, which was the direct and proximate cause of the injury; that appellee had been directed by his foreman to go upon the tank and stop the leaks in the manner he was undertaking to perform the work at the time of the injuries, and which, as alleged, was the proper and only way to stop such leaks.

The appellant Houston & Texas Central Railroad Company answered by alleging that at the time of the injuries complained of its properties, including the tank in question, were under control, management, and operation of the United States government, acting by Walker D. Hines, Director General of Railroads, and that under General Order No. 50 no cause of action arose against it by reason of the injuries to appellee, and that it was not subject to suit for damages resulting therefrom.

The appellant Walker D. Hines, Director General, pleaded a misjoinder of parties; and both appellants, in addition to a general demurrer and denial, pleaded that at the time of the alleged injuries they were engaged in interstate commerce, and that the water tank on which appellee was at work was an appliance, machinery, works, and equipment of said railroad, employed and used as a part of interstate commerce, and appellee was employed in such commerce, and by reason of these facts that they were not liable for the injuries complained of, for the reason that the same were the result of risks assumed by appellee. They further plead contributory negligence on the part of appellee in mitigation of the damages sustained.

The case was submitted to the jury on special issues, and the findings of the jury upon these issues are, in substance, as follows:

First, that the appellee, while in the employ of the appellants, on or about June 27, 1918, was injured by the falling of the water tank upon which he was then working.

Second, that the tank at the time of the injury was not in such condition as to constitute it a reasonably safe place for a person to go upon and perform the work appellee was engaged in.

Third, that the maintenance of the tank in question by the appellants in its then condition was an act of negligence on their part.

Fourth, that the maintaining the tank in an unsafe condition was the direct and proximate cause of the injuries sustained by the appellee.

Fifth, that the condition of the tank in its unsound condition was known to appellants, or might by the exercise of ordinary care have been known to them.

Sixth, that the appellee at the time he went upon the tank to perform his work did not know of its dangerous and defective condition.

Seventh, that the appellee could and would, by the exercise of ordinary care, have learned and known of the dangerous and defective condition of the tank before he began working thereon.

Eighth, that a person in the exercise of ordinary care, possessed of the same information and knowledge as appellee, would not have gone upon said tank under the same or similar circumstances as the appellee did.

Ninth, that in going upon the tank to work under all the facts and circumstances as disclosed by the evidence was contributory negligence on the part of the appellee.

Tenth, that the sum of fifteen thousand ($15,000) dollars, if paid in cash at this time, would fairly compensate appellee for the injuries sustained.

Eleventh, that the amount found in answer to issue No. 10 should be reduced by the sum of three thousand ($3,000) dollars by reason of appellee's contributory negligence.

Twelfth, that the falling of the tank and the injuries received by appellee were not the result of a risk incident to the work which he was undertaking to perform.

Upon the findings indicated judgment was rendered against both appellants jointly and severally for the sum of $12,000 and costs, with this provision, "But no execution shall issue herein, but such judgment is payable by the United States." It was pleaded and proven by defendants that they were engaged in interstate commerce, and that the water tank upon which plaintiff was working when injured was an instrumentality used in such commerce, and the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) was applicable.

Opinion.

The railroad company complains of the refusal of a peremptory instruction in its favor upon the ground that it was not in possession, management, or control of its properties at the time plaintiff received his injuries; that the Director General of Railroads, under the Federal Control Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), was in possession and control thereof, operating same, and the company was not liable to the plaintiff for the damages sustained, and under general order No. 50, promulgated by the Director General, could not be sued for such damages.

[1] Under the acts of Congress commonly called the Federal Control Act the possession, control, and management of the railway company's line of railroad was completely and exclusively vested in the Director General. Ry. Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897.

[2] The relation of master and servant did not exist between the company and appellee during the period of government control. The appellee's cause of action having accrued during that period, the company is not liable therefor, and a personal judgment cannot be rendered against it for the damages sustained by Long. Schumacher v. Ry. Co., 106 Misc. Rep. 564, 175 N. Y. Supp. 84; Mardis v. Hines (D. C.) 258 Fed. 945; Haubert v. Ry. Co. (D. C.) 259 Fed. 361; Nash v. S. P. Co. (D. C.) 260 Fed. 280; Vaughn v. State, 81 South. 417.

The learned trial judge recognized this nonliability on the part of the company for the judgment rendered prohibits the issuance of execution thereon and expressly provides that it is payable by the United States. The judgment thus imposes no personal liability upon the company. The legal effect of the judgment is to determine that the asserted right of the plaintiff is meritorious, and his damages assessed and established as a valid demand against the United States.

[3] In view of the fact that the judgment completely protects the company from any personal liability, we fail to see how it has been in any wise prejudiced or harmed by the refusal of a peremptory instruction in its favor.

Under this view, it becomes unnecessary to pass upon the validity of general order No. 50, which has been upheld by some courts. See Mardis v. Hines, Haubert v. Ry. Co., Nash v. S. P. Co., all supra; Rutherford v. Ry. Co. (D. C.) 254 Fed. 880; Dahn v. McAdoo (D. C.) 256 Fed. 549. And declared to be invalid by others. See Lavalle v. Ry. Co. (Minn.) 172 N. W. 918; McGregor v. Ry. Co. (N. D.) 172 N. W. 841; Johnson v. McAdoo (D. C.) 257 Fed. 757; Jensen v. Ry. Co. (D. C.) 255 Fed. 795.

Its validity is debatable, and since the judgment in this case imposes no personal liability upon the defendant company, and expressly provides that it is payable by the United States, the rights of such company are adequately and fully protected, and the refusal of the peremptory instruction in its favor presents no reversible error.

Both appellants also complain of the refusal of peremptory instructions in their favor presenting this proposition:

"The rule that it is the duty of the master to use ordinary care to provide the servant a reasonably safe place in which to work does not apply where the servant is engaged to make repairs in order to render the place or instrumentality safe or suitable for the master's purposes. The appellee being engaged in making repairs on the water tank in order to make it safe and suitable for the purposes for which it was used, the appellant was under no legal duty to use reasonable care to provide him a safe place in which to work, and the failure to do so would not constitute actionable negligence."

[4, 5] It is of course well settled that the rule making it the duty of the master to use ordinary care to provide a safe working place has no application where the servant is engaged for the very purpose of repairing and making a dangerous place safe, but, upon the facts in this case, a peremptory instruction based upon this rule would not be proper.

There is evidence to show the following facts: Long was a carpenter, working in the bridge gang. J. C. Overcash was foreman of the gang. Long was assistant foreman, being in charge in the absence of Overcash. There was a leaky water tank at Thornton station. The foreman, Overcash, directed Long and another employé, Dixon, to go to Thornton and repair the leak. He directed that they go to Thornton and first have the tank filled with water; then for one of them to get on top of the tank and pour cinders therein which would be handed up by the other man. The leak was from cracks in the staves at the bottom of the tank. It was expected that the cinders thus poured in the tank would enter the crevices and stop the leak. The tank was built upon piling, and was about 14 feet above the ground. Upon their arrival at Thornton the tank was filled with water, and thereupon Long ascended the tank, getting on its top and in the middle. Dixon was engaged in handing up to him buckets of cinders, which Long would pour into the tank. While thus engaged the structure collapsed and Long received his injuries. The collapse of the structure was due to the decayed and rotten condition of the tank and its support. It had been in this decayed and unsafe condition for some time, and it had been several times reported to the managing heads. In doing the work Long was foreman of Dixon. Upon the facts stated, the rule invoked by appellant has no application. Long, in going upon the top of the tank and pouring the cinders into the same, was acting

under the direct orders of his superior. The work in which he was engaged was merely stopping a leak, and was in no sense a repair job, designed to make safe and strong the structure upon which he was directed to go to perform his task.

As said in 3 Labatt M. & S. (2d Ed.) § 924:

"In all cases the master must exercise ordinary care to render the place of work reasonably safe for his servants. Where, however, the very progress of the work causes the conditions surrounding the place of work to change, such as in the construction or demolition of a building, or where the work itself consists of rendering a dangerous place safe, the exercise of such ordinary care on the part of the master may, and frequently does, fail to give to the place of work the same amount of safety that the same degree of care would give to a place of work the conditions surrounding which were permanent. The master's duty is not altered, but the results of the exercise of that duty may differ very materially. The mere fact that there are dangers connected with all work of the general character of that here discussed, which ordinary care on the part of the master cannot remove, does not excuse him from liability for injuries due solely to dangers which the exercise of ordinary care would have removed."

It is next insisted that upon the seventh finding judgment should have been rendered for defendants.

The ground of negligence upon which the plaintiff bases his right of recovery is the failure of the master to furnish a safe working place. As heretofore indicated, he was on top of the tank in the position which the foreman had directed should be taken in performing the assigned task.

[6] The negligence of the master in failing to provide the plaintiff with a safe place to perform his task is established by the findings of the jury, and is amply supported by the evidence. Upon this state of facts it is well settled by the decisions of our Supreme Court that the following rules of law are applicable, viz.:

[7] The servant has the right to assume that the master has discharged his duty in providing a safe working place.

"He is not required to use ordinary care to see whether this has been done or not. He does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risks, or, in the ordinary discharge of his own duty, must necessarily have acquired the knowledge." Ry. Co. v. Hannig, 91 Tex. 347, 43 S. W. 508; Ry. Co. v. Bingle, 91 Tex. 287, 42 S. W. 971.

The same rule, but in different language, is thus stated in Barnhart v. Ry. Co., 107 Tex. 638, 184 S. W. 176:

"The plaintiff had the right to rely upon the master to furnish him a safe place to work, and he need make no inspection to ascertain whether the master had discharged this duty.

He assumed the risks ordinarily incident to his employment, but he did not assume the risks arising from the master's negligence in failing to furnish a safe place in which to work, unless the danger was obvious, or unless he had actual knowledge thereof."

The case at bar arises under the federal Employer's Liability Act, but the rule of decision in the federal courts is the same as that announced by our own. Ry. Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188; Ry. Co. v. Hall, 232 U. S. 97, 34 Sup. Ct. 229, 58 L. Ed. 522.

The jury found that Long did not know of the dangerous condition of the tank. There is no finding by the jury that its defective and dangerous condition was so obvious and patent that Long, in the ordinary discharge of his own duty, must necessarily have acquired such knowledge, but there is evidence which would support a contrary finding.

[8] Since the case was tried upon special issues, it is presumed in favor of the judgment that such contrary finding was made by the court. Article 1985, R. S.

[9] And upon findings of a want of both actual knowledge and constructive knowledge imputed under the rule stated, judgment was properly rendered for the plaintiff.

[10] The seventh finding is immaterial and noncontrolling for the reason that the plaintiff was under no obligation to use ordinary care to ascertain whether the tank was a safe place to go upon to perform his task. Ry. Co. v. Hannig, supra.

What has been said also disposes of the fifth assignment, which complains of the refusal to submit a special requested issue.

Under the sixth assignment it is asserted that the sixth finding of the jury is contrary to the overwhelming weight and preponderance of the evidence, and should be set aside by this court. The plaintiff testified that when he went to work on the tank it had the appearance of having been freshly painted a short time before, and the outside appearance was that it was sound; that it did not look like it had any decayed matter in it at all, and he did not know it would be dangerous to get out on it.

[11] It is true there is an abundance of evidence in the record that plaintiff did know of the decayed and unsafe condition of the tank and its support, but the plaintiff's testimony raises a clear issue of fact, and it was the province of the jury to pass upon the credibility of the witnesses.

[12] In the condition of the record this court would not be warranted in setting aside the jury's finding.

Under the seventh assignment it is asserted that the third finding, to the effect that the maintenance of the tank in question by the appellants in its then condition was an act of negligence, is contrary to the evidence, for the reason—

"that until the tank had become out of repair and unsuitable for use for the purposes intended the relation of master and servant between appellant and appellee did not arise as to this particular tank, and there being no duty to maintain the tank in any condition, good or bad, as to appellee, it could not be in law an act of negligence to maintain the tank in the condition it was in at the time of the accident."

[13] This proposition cannot be sustained, for it was the duty of the defendants to use ordinary care to provide appellee a safe working place.

The thirteenth assignment complains of the submission of the question of plaintiff's injuries being permanent upon the ground that there was no evidence that same were permanent. In this there was no error, the evidence being sufficient to raise the issue as to the permanence of the injuries.

The fifteenth assignment is as follows:

"Because the court erred in not sustaining defendant's objection to question No. 2, as follows: 'Because, under the evidence in this case, the plaintiff rested under the duty of providing for himself a safe place in which to do said work, he at that time being foreman in charge of said work, with authority to select the manner of performing the work, and the defendants were discharged from such duty as to the plaintiff.'"

This assignment is not well taken for the reason that the plaintiff's evidence discloses that he was directed by the foreman, Overcash, to take Dixon, go to Thornton, and stop the leak in the water tank, and was directed by Overcash how to do the work, and he was doing the work in the manner directed when the accident occurred.

The sixteenth assignment complains that the twelfth finding is unsupported by the evidence, the proposition advanced being as follows:

"The servant assumes not only the ordinary, but the extraordinary, risks incident to his employment, and, where the injury is sustained by the servant by reason of such risks, the master is not liable for the damages resulting therefrom."

The position of appellant is not sound for the reason that it ignores the duty resting upon the master to furnish the servant a safe working place.

Error is assigned to certain argument by one of plaintiff's counsel in his address to the jury, wherein he stated—

"that if they wanted to render a verdict in favor of the plaintiff to answer question No. 6 'No,' and not answer it 'Yes,' and by such answer make it appear that they thought Ed Long was a fool in going upon the water tank."

[14] The impropriety of this statement of counsel to the jury is not debatable. First National Bank v. Porter, 204 S. W. 463; Patterson v. Bushong, 196 S. W. 966; Fain v. Nelms, 156 S. W. 281; G., H. & H. v. Hodnett, 182 S. W. 9; Merchants' Life Ins. Co. v. Griswold, 212 S. W. 814; Cameron Steam Pump Works v. Lubbock Light & Ice Co., 167 S. W. 257; Texas & Pac. Ry. Co. v. Rasmussen, 181 S. W. 212–217.

Another one of plaintiff's counsel in his argument to the jury stated—

"that he did not know whether the defendant railroad company had any soul or not, and that no one could kick it about like it was kicking the plaintiff."

[15] This was an appeal to the passion and prejudice of the jury and improper.

Plaintiff's witness Little having testified that plaintiff was a stout, healthy man, and had the use of his legs and arms before the accident, was then asked the following question by plaintiff's counsel, "Q. Now, that was 100%. Now, what is his condition as a man compared with that—what is it now?" to which he answered, "A. I think it is 75% anyhow."

[16] The question and its answer was objected to upon the ground that the question called for and the answer was the conclusion of the witness, who was not qualified to give his opinion, and the facts upon which his opinion was based not being stated by the witness. This testimony should have been excluded.

For the improper admission of this evidence and the improper argument of counsel, noted above, the case is reversed.

[17, 18] We are not to be understood as establishing the rule that improper argument and improper testimony of the nature here considered would in all instances require a reversal. This is a matter which in large measure depends upon the facts in each case, and involves the exercise of certain discretion by the court. In view of this whole record, we are of the opinion that in the instant case it is ground for reversal. In view of the reversal upon the ground indicated, it becomes unnecessary to consider the assignment complaining of the verdict and judgment as being excessive.

Reversed and remanded.